1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY MATSON,

               Plaintiff,

    v.

UNITED PARCEL SERVICE, INC.,

               Defendant.

CASE NO. C10-1528 RAJ

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

## I.   INTRODUCTION

      This matter comes before the court on defendant United Parcel Service, Inc.'s ("UPS") motion for summary judgment. Dkt. # 31. Plaintiff Mary Matson alleges three causes of action under Washington State law: discrimination on the basis of race and/or gender, discrimination/retaliation on the basis of opposition to unlawful practices, and wrongful termination in violation of public policy. Dkt. # 1 at 7-11; Dkt. # 42 (Opp'n) at 10:22-11:1. Plaintiff also alleges a claim for hostile work environment on the basis of race and/or gender. Dkt. # 1 at 8 ¶ 6.

1    Plaintiff moves to strike Exhibit B to the Declaration of Brian Coy (Dkt. # 32 at

2 31-33), because it is DIAD[1] records that were requested by plaintiff during discovery, but

3 were not produced until after the discovery cut-off.  Dkt. # 42 at 24 (Opp'n); Dkt. # 32

4 (Coy Decl.) ¶ 6.  Plaintiff argues that she was unable to depose Mr. Coy, who ostensibly

5 prepared the exhibit, because of the late production.  Defendant argues that it did not rely

6 on the document to discharge Ms. Matson, but that it used a program called "Smart

7 Shop" which allowed UPS to review the GPS location of DIAD scans.  However, Mr.

8 Coy admits that he used the information in Exhibit B to create the maps.  Dkt. # 32 (Coy

9 Decl.) ¶ 6.  In response to plaintiff's motion to strike, Mr. Coy provides a new

10 explanation for the origin of the information of the maps as the Smart Shop program.  *See*

11 Dkt. # 51 (2d Coy Decl.) ¶ 4.  Because of the seemingly inconsistent statements, it is

12 unclear to the court whether defendant relied on the information in Exhibit B in creating

13 the maps, and therefore relied on it in discharging plaintiff.  Because plaintiff was

14 prejudiced by her inability to depose Mr. Coy regarding this document, the court

15 GRANTS plaintiff's motion to strike, and strikes Exhibit B to the Coy Declaration for

16 purposes of this motion.  If plaintiff wishes to depose Mr. Coy regarding Exhibit B, she

17 may do so within seven days of this order at a mutually convenient time.

18    Having considered the memoranda, supplemental memoranda,[2] exhibits, oral

19 argument, and the record herein, the court GRANTS in part and DENIES in part UPS's

20 motion for summary judgment.

21

22    [1] "A 'DIAD' is an electronic device that each UPS delivery driver carries and uses during
their daily dispatch to input and record delivery information.  UPS has a software program that
23 allows UPS to enter the tracking number of a package and see the GPS location of the driver's
DIAD when: (1) the package is scanned; (2) the delivery is entered; and (3) the stop is
24 completed."  Dkt. # 32 (Coy Decl.) ¶ 4.
    [2] On April 25, 2012, plaintiff moved for leave to supplement the record with evidence
25 acquired as a result of the court's granting of a motion to compel.  Dkt. # 57.  At least some of
the evidence is relevant to plaintiff's claim for gender discrimination.  *See* Dkt. # 58 (Supp.
26 Matson Decl.) ¶¶ 2-4; # 59 (Exs. to Supp. Humphreys Decl.), Ex. A (Veentjer Depo.) at 25:19-
26:1, 46:7-50:24, 68:14-70:17, Exs. E, F.  However, because the court has found the evidence

1                                  **II. BACKGROUND**

2          Ms. Matson, a Caucasian female, was hired by UPS in 2002.  In 2003 and 2004,

3    Ms. Matson claims that a few African-American female employees routinely called her

4    "white honkey" or "cracker."  One of those employees also allegedly charged and "body-

5    slammed" Ms. Matson against a package belt.  Ms. Matson reported the name-calling and

6    physical assault to management, who responded by moving Ms. Matson to a different

7    work area.  Ms. Matson concedes that those employees stopped calling her names after

8    she was moved.  In July through November 2007 and February through June 2008, Ms.

9    Matson claims that management routinely offered "extra work" to male drivers with less

10   seniority than woman drivers, despite UPS's policy to offer "extra work" to the most

11   senior driver.  Dkt. # 44 (Matson Decl.) ¶ 6.  This "extra work" resulted in increased

12   hours and increased pay.  In 2008, Ms. Matson claims that different African-American

13   employees called her "white honkey."  Ms. Matson claims that she repeatedly

14   complained to management about their practice of providing "extra work" to male drivers

15   instead of female drivers, that she filed numerous grievances, and that she filed a

16   complaint to the Equal Employment Opportunity Commission ("EEOC") and the

17   Washington Human Rights Commission ("WHRC").  Ms. Matson also filed two

18   workers' compensation claims in August 2008 and November 2009.  In January 2010,

19   UPS investigated two drivers, Ms. Matson and Mike Frausto, regarding overallowed

20   hours.  As a result of that investigation, UPS determined that both Ms. Matson and Mr.

21   Fausto had falsified delivery records, four and eleven times, respectively.  UPS

22

23   _____

24   presented in the original briefing is sufficient to send plaintiff's claim for gender discrimination
     to a jury, the court need not consider the newly acquired evidence.  Accordingly, the court
25   DENIES plaintiff's motion for supplemental briefing.  Dkt. # 57.  Additionally, defendant has
     not moved for leave to supplement the record.  The court has reviewed the Veentjer deposition
26   transcript, but has disregarded other evidence that could have been brought to the court's
     attention in defendant's original briefing.
27

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 3

1  terminated both Ms. Matson and Mr. Fausto for "proven dishonesty."  However, Mr.

2  Fausto's employment was later reinstated.

3  ## III. ANALYSIS

4       Summary judgment is appropriate if there is no genuine dispute as to any material

5  fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

6  56(a).  The moving party bears the initial burden of demonstrating the absence of a

7  genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

8  Where the moving party will have the burden of proof at trial, it must affirmatively

9  demonstrate that no reasonable trier of fact could find other than for the moving party.

10 *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  On an issue where the

11 nonmoving party will bear the burden of proof at trial, the moving party can prevail

12 merely by pointing out to the district court that there is an absence of evidence to support

13 the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets

14 the initial burden, the opposing party must set forth specific facts showing that there is a

15 genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby,*

16 *Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most

17 favorable to the nonmoving party and draw all reasonable inferences in that party's favor.

18 *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

19 **A.**     **Discrimination on Basis of Gender (RCW 49.60.180)**[3]

20      In employment discrimination cases where plaintiff has not attempted to

21 demonstrate direct evidence of discriminatory intent, the *McDonnell Douglas* burden-

22 shifting analysis augments the familiar summary judgment standard.  *Aragon v. Republic*

23 *Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002) (citing *McDonnell Douglas*

24

25 ―――――――――――――――

26     [3] Plaintiff has apparently abandoned her claim for discrimination on the basis of race.
   Accordingly, the court GRANTS defendant's motion for summary judgment with respect to
27 plaintiff's claim for race discrimination under Washington State law.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 4

1    *Corp. v. Green*, 411 U.S. 792 (1973)).  Although the *McDonnell Douglas* analysis

2    evolved to address employment discrimination claims invoking federal law, Washington

3    courts apply substantially the same standard to claims invoking the Washington Law

4    Against Discrimination ("WLAD").  *Kastanis v. Educ. Emps. Credit Union*, 122 Wash.

5    2d 483, 490, 859 P.2d 26 (1993).  Under the *McDonnell Douglas* framework, plaintiff

6    must offer evidence supporting a prima face case of unlawful discrimination.  *Id.*  If she

7    succeeds, the burden shifts to UPS to produce evidence of a lawful motive for

8    terminating her.  *Id.* at 491.  If UPS succeeds, plaintiff is obligated to produce evidence

9    that UPS's stated lawful motive is pretext.  *Id.*  If there is sufficient evidence of pretext,

10    the case must go to the jury.  *Id.*  The WLAD prohibits employers from discharging or

11    discriminating against any person in the terms or conditions of employment because of,

12    *inter alia*, a person's sex.  RCW 49.60.180(2) & (3).

13         A prima facie case of employment discrimination alleging disparate treatment has

14    four elements:  (1) the employee is a member of a protected class, (2) the employee is

15    qualified for the employment position or performing substantially equal work, (3) the

16    employee suffered an adverse employment action, and (4) similarly situated employees

17    not in plaintiff's protected class received more favorable treatment.  *Kang v. U. Lim Am.,*

18    *Inc.*, 296 F.3d 810, 818 (9th Cir. 2002); *Davis v. West One Auto. Group*, 140 Wn. App.

19    449, 459, 166 P.3d 807 (2007).  In opposing summary judgment, an employee's

20    evidentiary burden in establishing a prima facie case is not onerous.  *Aragon*, 292 F.3d at

21    659 (The "requisite degree of proof necessary to establish a prima facie case for Title VII

22    … on summary judgment is *minimal* and does not even need to rise to the level of a

23    preponderance of the evidence.") (emphasis in original).

24         Ms. Matson is a woman, and therefore a member of a protected class.  Defendant

25    has not disputed that Ms. Matson was qualified for the position prior to the alleged

26    falsification of records.  *See* Dkt. # 43 (Ex. C to Humphreys Decl. at 8:47-9:5).  Plaintiff

27    has provided evidence that UPS managers offered extra work to male employees with

1    lower seniority than her, that UPS managers ensured that male drivers were assigned

2    preferable vehicles, that her employment was terminated, that her position was replaced

3    by a male, and that a male employee, who had been terminated for similar reasons to

4    plaintiff, was reinstated.[4]  Dkt. # 44 (Matson Decl.) ¶¶ 3, 4, 10, 17, 19; Dkt. # 45

5    (Wheeler Decl.) ¶¶ 7-9.  Accordingly, Ms. Matson has met prong one, and the burden

6    shifts to defendant to demonstrate a lawful motive for discharge.[5]

7        Pursuant to the collective bargaining agreement ("CBA") between UPS and the

8    International Teamsters Union, all UPS employees are subject to immediate discharge

9    without notice for proven dishonesty.  Dkt. # 34 (Ex. B to Mizumoto Decl. at) ¶ 2.

10   Defendant has presented evidence that plaintiff falsified delivery records on four

11   occasions in January 2010, which subjected her to discharge for proven dishonesty.  Dkt.

12   #32 (Coy Decl.) ¶¶ 5-7; # 34-1 at 13 (Ex. E to Mizumoto Decl.).  UPS has met its burden

13   under *McDonnell Douglas*, and the burden shifts back to plaintiff to present sufficient

14   evidence of pretext.

15       A plaintiff "can show pretext in two ways: either 'directly by persuading the court

16   that a discriminatory reason more likely motivated the employer, or indirectly by

17   showing that the employer's proffered explanation is unworthy of credence.'"  *Stegall v.*

18   *Citadel Broadcasting Co.*, 350 F.3d 1061, 1068 (9th Cir. 2003) (quoting *Texas Dep't of*

19   _____

20       [4] The court notes that defendant has provided evidence that four other women
21   occasionally received "extra work."  Dkt. # 33-1 (Ex. A to Garcia Decl., Matson Depo. at 159:2-
     162:15, 300:1-302:25, 382:11-18, 388:2-389:9).  Plaintiff has directed the court to evidence that
22   at least some of those situations involved a non-management employee who unilaterally gave a
     package to a female driver (Dkt. # 33-1 (Ex. A to Garcia Decl., Matson Depo. at 382:3-13)), a
23   female driver disclaiming part of her duties which created "extra work" that was then given to a
     male driver (Dkt. # 33-3 (Ex. A to Garcia Decl.) at 5), and instances where management made a
24   point to state that it was not given to a man (Dkt. # 33-1 (Ex. A to Garcia Decl., Matson Depo. at
     301:7-15, 388:12-22).  These factual disputes do not affect whether plaintiff has met her initial
25   burden, which she has.
26       [5] Defendant argues that plaintiff has not established "a prima facie case of discrimination
     because she was discharged for proven dishonesty[.]"  Dkt. # 31 at 15.  However, this argument
27   is relevant to defendant's burden of production that she was discharged for a lawful reason.

1  *Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  Where there is direct evidence of an

2  employer's discriminatory intent, the Ninth Circuit has held that plaintiff need only show

3  little or minimal evidence of discrimination to show pretext.  *Kang v. U. Lim. Am., Inc.*,

4  296 F.3d 810, 819 (9th Cir. 2002).  Where evidence of pretext is circumstantial, rather

5  than direct, the Ninth Circuit has held that plaintiff must produce "specific" and

6  "substantial" facts to create a triable issue of pretext.  *Earl v. Nielsen Media Research,*

7  *Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011).  In *Cornwell v. Electra Central Credit Union*,

8  the Ninth Circuit addressed the differing amount of evidence required for direct versus

9  circumstantial evidence of discrimination.  439 F.3d 1018 (9th Cir. 2006) (Fisher, J.,

10  Gould, J. Bea, J.).  The Ninth Circuit explained its reasoning in a prior case in which it

11  reasoned that the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90,

12  100 (2003) required that "circumstantial and direct evidence should be treated alike."  *Id.*

13  at 1030.  The *Cornwell* court relied on "the Supreme Court's recognition in *Costa* that

14  circumstantial evidence may be 'more certain, satisfying and persuasive than direct

15  evidence[.]'"  *Id.*  The *Cornwell* court concluded that in the context of summary

16  judgment, Title VII does not require a disparate treatment plaintiff relying on

17  circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on

18  direct evidence.  *Id.*  The court recognized:  "Although there may be some tension in our

19  post-*Costa* cases on this point-several of our cases decided after *Costa* repeat the *Godwin*

20  requirement that a plaintiff's circumstantial evidence of pretext must be 'specific' and

21  'substantial' – this panel may not overturn Ninth Circuit precedents in the absence of

22  'intervening higher authority' that is 'clearly irreconcilable' with a prior circuit holding."

23  *Id.* at 1030-31.  This court need not decide this issue, because the court finds that plaintiff

24  has presented specific and substantial evidence to create an issue of material fact as to

25  pretext.

26         Plaintiff has presented evidence that a male UPS driver, Mike Frausto, falsified

27  delivery records eleven times, was terminated for falsifying delivery records, and was

1   later reinstated.  Dkt. # 43 (Ex. A to Humphreys Decl., Coy Depo. at 102:7-16, 112:17-

2   25, 114:1-2).  Both Mr. Frausto and Ms. Matson were early A.M drivers, reported to the

3   same managers, and performed nearly identical job duties.  Dkt. # 44 (Matson Decl.) ¶

4   19.  Ms. Matson only had four instances of falsifying delivery records, and she was not

5   reinstated.  Several witnesses have indicated that despite UPS's honesty policy,

6   management encouraged the drivers to scan packages prior to being at the delivery

7   location to ensure the records reflect that the packages arrived on time, and that other

8   drivers were not disciplined for similar conduct.  Dkt. # 43 (Ex. A to Humphrys Decl.,

9   Coy Depo. at 102:24-103:7, 106:25-107:23);[6] # 44 (Matson Decl.) ¶ 16; # 45 (Wheeler

10  Decl.) ¶ 19; # 46 (Copeland Decl.) ¶ 13.  Plaintiff also showed Brian McKinney, a

11  manager, a copy of a male driver's delivery records that she believed showed that the

12  male driver was pre-recording packages, making false entries, and delivering packages

13  that should have been provided to her.  Dkt. # 44 (Matson Decl.) ¶ 17.  That same record

14  was shown to Brian Coy during his deposition (*id.* ¶ 18), and Mr. Coy testified that had

15  he seen the delivery records, he would have conducted an investigation similar to the

16  investigation he conducted with Ms. Matson and Mr. Frausto (Dkt. # 43 (Ex. A to

17  Humphreys Decl., Coy Depo. at 125:19-128:13)).  No such investigation occurred.[7]

18  Finally, plaintiff has provided evidence that "extra work" was routinely offered to male

19  _____

20  [6] The court notes that although this evidence contains hearsay, the court has focused on
the admissibility of the evidence's content, not on the admissibility of the evidence's form.  *See*
21  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  Presumably, Mr. Frausto would be
available at trial to testify regarding whether management encouraged pre-recording packages.
22
    [7] The court notes that although Mr. Coy could not recall what the time frame was for
23  investigating other instances of falsifications with other drivers, he believed it would have been
around two weeks.  Dkt. # 43 (Ex. A to Humphreys Decl., Coy Depo. at 140:3-14).  Given that
24  plaintiff has presented evidence of at least one driver who may have falsified delivery records
and evidence that management encouraged drivers to pre-record packages, which would seem to
25  be a violation of UPS's honesty policy, a jury may conclude that the two-week timeframe for
investigations of falsified delivery records was insufficient to determine whether management
26  encouraged drivers to pre-record deliveries, or whether management selectively enforced that
practice.
27

1 || drivers with less seniority than woman drivers.  Dkt. # 44 (Matson Decl.) ¶¶ 3, 4, 10, 17,

2 || 19; Dkt. # 45 (Wheeler Decl.) ¶¶ 7-9; Dkt. # 46 (Copeland Decl.) ¶ 6.

3 ||        Defendant places large emphasis on a package it argues plaintiff "fraudulently

4 || altered to hide her dishonesty."  However, plaintiff claims that she misread the address

5 || label as "6075 185th Ave" instead of "6675 185th Ave" because it was dark and the

6 || vehicle was poorly lit.  Dkt. # 44 (Matson Decl.) ¶ 21.  She claims that after she entered

7 || that the address did not exist in the DIAD, she read and recognized the name of the

8 || company.  *Id.*  She states that she then crossed out what she believed to be the incorrect

9 || address and wrote in the correct address.  *Id.*  In a prior interview regarding this delivery

10 || record, Ms. Matson allegedly stated that the label had been written over and said

11 || something different than the correct address.  Dkt. # 51 at 6 (Ex. A to 2d Coy Decl.).

12 || This statement is not entirely inconsistent with Ms. Matson's declaration because

13 || "crossed out" is not necessarily the same as "written over."  The court must construe the

14 || evidence in the light most favorable to plaintiff, and may not make a credibility

15 || assessment on summary judgment.[8]  The court cannot take defendant's conclusion of

16 || fraudulent alteration as true in the face of a plausible, reasonable explanation of an honest

17 || mistake by plaintiff.  Accordingly, evidence that the package was altered is not

18 || dispositive on the issue of pretext.

19 ||        The court finds that the record contains reasonable but competing inferences of

20 || both discrimination and nondiscrimination on the basis of gender.  *See Hill v. BCTI*

21 || *Income Fund-I*, 144 Wash. 2d 172, 186, 23 P.3d 440 (2001), *overruled on other grounds*

22 || *by McClarty v. Totem Elec.*, 157 Wash. 2d 214, 137 P.3d 844 (2006).  Accordingly,

23 || plaintiff's claim for gender discrimination must be resolved by a jury.

24

25 ||        [8] During oral argument, defendant argued that the court should not credit Ms. Matson's

26 || "bare assertions."  Ms. Matson has not made "bare assertions."  She has submitted a sworn
declaration and deposition testimony.  These are admissible facts that the court must consider,

27 || and whether or not her testimony should be credited is the province of the jury.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 9

**B.     Hostile Work Environment on the Basis of Race and Gender**

To establish a prima facie case of hostile work environment, Ms. Matson must show that the harassment (1) was unwelcome, (2) was because of her sex or race, (3) affected the terms and conditions of her employment, and (4) is imputable to UPS. *Antonius v. King County*, 153 Wash. 2d 256, 261, 103 P.3d 729 (2004).  Conduct is harassing when it is "unwelcome in the sense that the plaintiff-employee regarded the conduct as undesirable or offensive."  *Glasgow v. Georgia-Pacific Corp.*, 103 Wash. 2d 401, 406, 693 P.2d 708 (1985).  The third element requires that the harassment be sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment, to be determined with regard to the totality of the circumstances.  *Id.* at 406-07.  With respect to the fourth element, to "hold an employer responsible for the discriminatory work environment created by a plaintiff's supervisor(s) or co-worker(s), the employee must show that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action."  *Glasgow*, 103 Wash. at 407.

1.     Race

Defendant argues that plaintiff's race-based hostile work environment claim fails on three grounds: (1) Ms. Matson's allegations are time-barred by the statute of limitations, (2) Ms. Matson's alleged facts are not severe or pervasive, and (3) Ms. Matson's allegations of hostile work environment are not imputable to UPS.  Dkt. # 31 (Mot.) at 24-26.  Because the court finds that Ms. Matson has not met her prima facie burden even if the court considered the allegedly time-barred allegations, the court need not address the statute of limitations issue.

Ms. Matson claims that she was called "cracker" and "white honkey" frequently in 2003 and 2004.  Dkt. # 44 (Matson Decl.) ¶ 24.  In 2004, an employee who routinely referred to Ms. Matson as "cracker" or "white honkey," charged and "body-slammed" Ms. Matson against a package belt.  *Id.*  Ms. Matson reported the name-calling and

1   alleged physical assault to management. *Id.* After she reported this conduct, managers

2   moved Ms. Matson to a different work area, and she concedes that the name calling and

3   harassment stopped after she was moved. *Id.*; Dkt. # 33-1 (Ex. A to Garcia Decl., Matson

4   Depo. at 46:12-15, 50:19-51:2). The fact that the race-based name calling by these

5   particular individuals did not occur again is proof that defendant's response was

6   reasonable and adequate as a matter of law. *Francom v. Costco Wholesale Corp.*, 98 Wn.

7   App. 845, 857, 991 P.2d 1182 (2000).

8        Ms. Matson also claims that the name-calling resumed in 2008 by different

9   employees. However, she only identifies one race-based comment[9] that occurred when

10  she was listening to music, and some employees stated, "you don't listen to that white

11  honkey [sic]." Dkt. # 33-1 (Ex. A to Garcia Decl., Matson Depo. at 51:10-55:10). There

12  is no evidence that plaintiff reported the name calling that occurred in 2008 to

13  management. However, Ms. Matson argues that she reported the 2008 "race-based

14  hostility" to management. Dkt. # 42 at 21. The only evidence plaintiff cites is a June

15  2008 email chain, in which a manager describes that Ms. Matson complained that the two

16  African-American employees who had called her names in 2003 and 2004 were "gang

17  banging." Dkt. # 49 at 5 (Ex. A to 2d Mizumoto Decl.). Although she claims that she

18  reported a hostile work environment in June 2008, Ms. Matson does not dispute that her

19  complaint to management in June 2008 was that two African-American women were

20  "gang banging." Dkt. # 44 (Matson Compl.) ¶27. Nor does Ms. Matson explain what

21  conduct or words were used by the individuals that led her to believe they were "gang

22  banging," or whether the alleged conduct or words were directed at her or made because

23  of her Caucasian race.

24

25        [9] Although Ms. Matson claims that the employee who had body-slammed her in 2004

26  "continued to make threatening gestures towards [her], including jumping at [her] and charging
    at [her], there is no evidence that the threatening gestures were made because of Ms. Matson's

27  Caucasian race.

1   Plaintiff has failed to establish a prima facie case of race-based hostile work

2   environment, because the alleged conduct of her coworkers, even in the aggregate, was

3   not severe or pervasive, and, even if it was, the alleged hostile work environment was not

4   attributable to UPS.

5      2.      Gender

6   Defendant first argues that plaintiff's gender-based hostile work environment

7   claim fails because it is preempted by section 301 of the Labor Management Relations

8   Act ("LMRA").  Defendant did not identify a single provision of the CBA that would

9   require interpretation or is disputed in its briefing.  In oral argument, defendant identified

10  seven provisions and provided the court a copy of the CBA with those provisions.

11  However, those provisions are not in the record before the court because they were not

12  filed with defendant's briefing.  The court finds no extenuating circumstances that would

13  warrant admitting new evidence that could have been brought to the court's attention

14  earlier with the exercise of reasonable diligence.  *See* Dkt. # 67 (Minute Order) at 3 ("The

15  court will not accept any new evidence barring exceptional circumstances).  Even if the

16  court did consider the CBA provisions, it would find that no interpretation would be

17  necessary for purposes of Ms. Matson's gender-based hostile work environment claim,

18  and plaintiff does not dispute the meaning of any of its terms.  *See Detabali v. St. Luke's*

19  *Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007) (No preemption where there was no dispute

20  over the meaning of any terms in the collective bargaining agreement, and resolution of

21  the central issue of discrimination did not depend on interpretation of the collective

22  bargaining agreement); *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691

23  (9th Cir. 2001) ("If the claim is plainly based on state law, § 301 preemption is not

24  mandated simply because the defendant refers to the CBA in mounting a defense.").

25  Defendant also argues that Ms. Matson's hostile work environment claim based on

26  work assignments fails because women were assigned extra work as well, and her claims

27

1   are nothing more than alleged seniority violations for which Ms. Matson already was

2   compensated through the CBA's grievance procedures.  Plaintiff argues that UPS created

3   a gender-based hostile work environment by routinely assigning work to male employees

4   that should have gone to Ms. Matson.

5          Unlike a disparate treatment claim, which requires an adverse employment action,

6   a hostile work environment claim focuses on the cumulative effect of a series of actions,

7   where the individual actions are not adverse employment actions.  *See Nat'l R.R.*

8   *Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *Porter v. Cal. Dep't of Corr.*, 383

9   F.3d 1018, 1027-28 (9th Cir. 2004), *amended by* 419 F.3d 885 (9th Cir. 2005).  "In

10  determining whether harassment occurs 'because of sex', the appropriate question is:

11  'would the employee have been singled out and caused to suffer the harassment if the

12  employee had been of a different sex?'"  *Payne v. Children's Home Soc. Of Wash., Inc.*,

13  77 Wash. App. 507, 514, 892 P.2d 1102 (1995) (quoting *Glasgow*, 103 Wash. 2d at 406).

14  Additionally, the "fact that discriminatory behavior is not directed at all members of

15  plaintiff's gender is not fatal, so long as the plaintiff shows if she had been of the

16  opposite gender, she would not have been so treated."  *Id.*

17         Here, Ms. Matson has presented evidence from two other women, in addition to

18  her own testimony, that management routinely offered "extra work" to male drivers with

19  less seniority than woman drivers.  Dkt. # 33-1 (Ex. A to Garcia Decl., Matson Depo. at

20  102:13-23, 208:10-25, 211:9-13); Dkt. # 44 (Matson Decl.) ¶¶ 3, 4, 10, 17, 19; Dkt. # 45

21  (Wheeler Decl.) ¶¶ 7-9; Dkt. # 46 (Copeland Decl.) ¶ 6.  There is also evidence that

22  certain managers would hide packages for male employees rather than alerting all drivers

23  in the area to the package.  Dkt. # 46 (Copeland Decl.) ¶ 6.  Although a close call, the

24  court believes that plaintiff has raised a genuine issue of material fact with respect to

25  whether plaintiff was caused to suffer harassment because of her sex.

26

27

**C.      Discrimination on the Basis of Opposition to Unlawful Practice (RCW 49.60.210)**

RCW 49.60.210 prohibits employers from terminating or otherwise discriminating against an employee because he or she opposed acts violating the WLAD.  RCW 49.60.210; *Hollenback v. Shriners Hospitals for Children*, 149 Wash. App. 810, 821, 206 P.3d 337 (2009).  Washington courts have adopted the *McDonnell Douglas* burden shifting framework with respect to retaliation claims.  To establish a prima facie case of retaliation under RCW 49.60.210, plaintiff must demonstrate that (1) she engaged in statutorily protected activity, (2) UPS took some adverse employment action against her, and (3) there is a causal connection between the opposition and the discharge.  *Graves v. Dep't of Game*, 76 Wash. App. 705, 711, 887 P.2d 424 (1994).  If plaintiff establishes a prima facie case, the evidentiary burden shifts to the employer to produce admissible evidence of a legitimate, non-retaliatory reason for the discharge.  *Hollenback*, 149 Wash. App. at 823.  If the employer meets its burden, the presumption is removed and the employee must then establish a genuine issue of material fact as to pretext.  *Id.*  "The plaintiff need not show that retaliation was the only or 'but for' cause of the adverse employment action, but he or she must establish that it was at least a substantial factor."  *Id.*

Defendant argues that Ms. Matson never wrote anything in her grievance to indicate that gender discrimination was an issue.  Dkt. # 31 (Mot.) at 23.  However, Ms. Matson has testified that when she attempted to allege gender discrimination in the grievance, the union told her that it would not accept a grievance that alleged discrimination, and that she would have to rewrite the grievance to only allege seniority violations.[10]  Dkt. # 33-1 (Ex. A to Garcia Decl., Matson Depo. at 208:20-25, 212:14-18,

---

[10] During oral argument, defendant argued that this was simply not true.  Again, the court cannot make a credibility determination on summary judgment.  Additionally, defendant has not presented any evidence that disputes Ms. Matson's testimony, and, even if it did, that dispute would be resolved in her favor.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 14

1    402:13-403:14); Dkt. # 44 (Matson Decl.) ¶ 9.  Ms. Matson also repeatedly made oral

2    complaints of gender discrimination to management.  Dkt. # 33-1 (Ex. A to Garcia Decl.,

3    Matson Depo. at 212:25-213:5, 225:3-8, 227:3-12); Dkt. # 44 (Matson Decl.) ¶¶ 6-7.

4    Indeed, the fact that management emphasized when extra work was given to a woman is

5    evidence that management knew of Ms. Matson's gender discrimination complaints.  *See*

6    Dkt. # 33-1 (Ex. A to Garcia Decl., Matson Depo. at 160:7-9, 301:7-15, 388:12-17).

7    When management failed to take action, Ms. Matson informed UPS managers that she

8    would be forced to file charges with the EEOC if they did not stop the gender

9    discrimination.  Dkt. # 44 (Matson Decl.) ¶ 6.[11]  In September 2008, Ms. Matson filed a

10   complaint with the EEOC and the WHRC alleging gender discrimination.  *Id.* ¶ 12.[12]

11   Accordingly, plaintiff has demonstrated that she engaged in statutorily protected activity.

12          Defendant argues that there is no causal connection between her discharge and her

13   complaints of discrimination.  Dkt. # 31 (Mot.) at 23.  Plaintiff argues that the time Ms.

14   Matson was on medical leave should be excluded in calculating the length of time

15   between the complaint and UPS commencing the investigation that led to plaintiff's

16   termination.  Dkt. #  42 (Opp'n) at 19.

17          One factor supporting retaliatory motive is proximity in time between the

18   protected activity and the employment action.  *Francom*, 98 Wn. App. at 862.  In

19   *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003), the Ninth Circuit rejected

20   "any bright-line rule about the timing of retaliation."  The *Coszalter* court stated:

21

22

23   _____

24          [11] The court notes that the June 19, 2008 email communications in which Ms. Matson
     threatened to seek remedy with the EEOC appears to be related to Ms. Matson's claim for race-
25   based hostile work environment, rather than gender discrimination.  Dkt. # 43 at 41 (Ex. A to
     Humphreys Decl., Ex. 1 to Coy Depo. [UPS 1062]); Dkt. # 49 at 5 (Ex. A to 2d Mizumoto
26   Decl.).
            [12] Ms. Mizumoto, a human resources manager, admits that she investigated Ms. Matson's
27   WHRC complaint and coordinated UPS's response.  Dkt. # 34 (Mizumoto Decl.) ¶ 1.

1
2
3
4
5
6

> There is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation. Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in light of the timing and the surrounding circumstances. In some cases, the totality of the facts may form such a clear picture that a district court would be justified in granting summary judgment, either for or against a plaintiff, on the issue of retaliatory motive; but the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment.

7
*Id.*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Here, Ms. Matson was discharged in February 2010, nearly seventeen months after she filed her EEOC and WHRC complaint. However, Ms. Matson made repeated complaints of gender discrimination during July through November 2007 and February through June 2008. Dkt. # 44 (Matson Decl.) ¶ 6. In May 2008, plaintiff told UPS managers that she would be forced to file EEOC charges if the gender discrimination did not stop. *Id.* On August 28, 2008, Ms. Matson's doctor removed her from work as a result of a work injury. *Id.* ¶ 11. On September 8, 2008, Ms. Matson filed her complaint with the WHRC and the EEOC. *Id.* ¶ 12. As a result of the severity of her injury, Ms. Matson was on medical leave until November 15, 2009. *Id.* ¶ 13. In early January 2010, only a couple months after her return to work, UPS began the investigation that eventually led to Ms. Matson's termination. Based on these factual circumstances, a jury could reasonably infer that the temporal proximity between her complaints and the investigation, excluding the time she was on medical leave,[13] could support an inference of retaliatory motive.

23
24
25
26
27

[13] The parties addressed whether the time Ms. Matson was on leave should be excluded during oral argument. Her repeated complaints of gender discrimination and her threat to file an EEOC complaint leading up to her work injury, combined with the investigation that started within two months of her return from medical leave could support an inference of retaliatory motive. The court is persuaded that a jury could reasonably find that, given the factual circumstances, the timeframe should be excluded, because UPS could not legitimately terminate Ms. Matson while she was on medical leave.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT- 16

1   Plaintiff also relies on an email to demonstrate retaliatory motive.  In the initial

2   email, Mr. Murphy reports to Mr. Coy, Ms. Mizumoto, Geoffrey McKenzie and Charlie

3   Beswick on June 19, 2008:

4
5   I am uncertain as to which of you would take the lead on this.  After
    speaking with Charlie yesterday, I decided to present the issue to both of
    you.  In a nutshell, Mary Matson confronted me yesterday complaining that
6   we are allowing a hostile work environment to exist and if not rectified, she
    will seek remedy via the E.E.O.C.
7

8   What concerned me was the example she cited as evidence of the alleged
    hostile work environment.  Mary complained about Carmen Pickering and
9   Linda Hay "gang banging" out at the EAM tent.  When Mary repeated the
    allegation of gang banging, I asked her to clarify what she meant by the
10  term.  She did not respond.  I find it highly unlikely that Carmen or Linda
    would engage in any sort of behavior that could remotely be described as
11  gang banging.  I do find it disturbing, prejudicial, and inappropriate if Mary
    is characterizing a conversation between two African-American women as
12  "gang banging."

13

14  Please advise as to the next appropriate course of action.

15  Dkt. # 49 at 5 (Ex. A to 2d Mizumoto Decl.).  Mr. McKenzie responded:  "Can Brian

16  come to BFI and interview Mary and the two individuals, if [sic] there was some form of

17  threatening conversation between the two to constitute this we need to take appropriate

18  action."  *Id.*  Mr. Veentjer responded:  "When this investigation is complete I would like

19  to know the response from Mary.  Depending on her answers this could lead to the next

20  step in progressive discipline."  *Id.*   There are two competing, reasonable interpretations

21  of this email.  The first is that Ms. Matson's statement that she would file a complaint

22  with the EEOC had a causal connection with Mr. Veentjer's threat of progressive

23  discipline.  The second is that the threat of discipline was only connected to the

24  investigation of the allegedly threatening conversations.  The court construes the

25  competing interpretations in plaintiff's favor.

26

27

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 17

1    Accordingly, the court finds that a reasonable juror could find a causal connection

2  between the threat of discipline and Ms. Matson's complaints of gender discrimination

3  and hostile work environment.  Plaintiff has made a prima facie case of retaliation under

4  the WLAD.

5    The burden then shifts to defendant to demonstrate a legitimate reason for the

6  termination.  As discussed above, UPS has met this burden of production.  The burden

7  shifts back to plaintiff to show that the reason is pretext or to show that although UPS's

8  stated reason is legitimate, her complaints of discrimination and hostile work

9  environment and her filing the EEOC complaint was a substantial factor motivating the

10  discharge.  Given the totality of the circumstances as described above, although a close

11  call, a reasonable juror could find that her complaints of discrimination and hostile work

12  environment and her filing the EEOC complaint was a substantial factor motivating the

13  discharge.  Plaintiff has demonstrated a genuine issue of material fact as to pretext.

14    Accordingly, plaintiff's claim for discrimination on the basis of opposition to

15  unlawful practice (RCW 49.60.210) must go to the jury.

16  **D.    Wrongful Termination in Violation of Public Policy**

17    Plaintiff alleges a common law cause of action for wrongful termination in

18  violation of public policy.  *See Wilmot v. Kaiser Aluminum & Chemical Corp.*, 118

19  Wash. 2d 46, 53, 821 P.2d 18 (1991) ("RCW 51.48.025 is not mandatory and exclusive; a

20  worker may file a tort claim for wrongful discharge based upon allegations that the

21  employer discharged the worker in retaliation for having filed or expressed an intent to

22  file a worker's compensation claim, independent of the statute.").  To establish a prima

23  facie case for retaliatory discharge, plaintiff must show that (1) she filed a workers'

24  compensation claim, (2) she was discharged, and (3) there is a causal connection between

25  filing her workers' compensation claim and the discharge.  *Id.* at 68.  In establishing the

26  causal connection, plaintiff must produce evidence that filing her workers' compensation

27

1   claim was a cause of the firing.  *Id.* at 70.  In so doing, she may use circumstantial

2   evidence such as the proximity in time between the claim and the firing, coupled with

3   evidence of satisfactory work performance and supervisory evaluations.  *Id.* at 69.  In

4   recognition of the difficulty of proving motive, Washington courts allow an employee to

5   establish the causation element of the prima facie case by merely showing that she filed a

6   workers' compensation claim, that the employer had knowledge of the claim, and that the

7   employee was discharged.  *Anica v. Wal-Mart Stores, Inc.*, 120 Wash. App. 481, 491, 84

8   P.3d 1231 (2004).

9        Plaintiff filed her second workers' compensation claim around November or

10  December 2009.  Dkt. # 44 (Matson Decl.) ¶ 13-14.  In January 2010, UPS began its

11  investigation that led to plaintiff's termination in February 2010.  Defendant has not

12  disputed that plaintiff performed satisfactory work prior to the investigation.

13  Accordingly, plaintiff has met her prima facie burden.

14       The burden then shifts to defendant to demonstrate a legitimate reason for the

15  termination.  As discussed above, UPS has met this burden of production.  The burden

16  shifts back to plaintiff to show that the reason is pretext or to show that although UPS's

17  stated reason is legitimate, her pursuit of workers' compensation benefits was a

18  substantial factor motivating the discharge.  Plaintiff has failed to produce evidence of

19  pretext with respect to her claim that she was wrongfully terminated for filing workers'

20  compensation claims.  Plaintiff has not produced any evidence that her workers'

21  compensation claim was a substantial factor in motivating her discharge either.

22       Accordingly, plaintiff's claim for wrongful discharge in violation of public policy

23  fails.

**IV. CONCLUSION**

25       For all the foregoing reasons, the court GRANTS in part and DENIES in part

26  defendant's motion for summary judgment.  Defendant's motion is GRANTED with

27  respect to plaintiff's claims for race discrimination, race-based hostile work environment,

1   and wrongful discharge in violation of public policy, and these claims are DISMISSED.

2   Defendant's motion is DENIED with respect to plaintiff's claim for gender

3   discrimination, gender-based hostile work environment, and discrimination based on

4   opposition to unlawful practice.  The court also DENIES plaintiff's motion to supplement

5   the record (Dkt. # 57) for the reasons previously stated.  *Supra*, n.2.

6          During oral argument, counsel for both parties indicated that the week of July 9

7   would be suitable for trial.  The Clerk of Court is ORDERED to issue an amended pre-

8   trial schedule with a trial date of July 9, 2012.  Due to the limited time remaining before

9   trial, there will be a truncated schedule for pre-trial deadlines.

10

11         Dated this 25th day of May, 2012.

12

13

14         The Honorable Richard A. Jones
           United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27