HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY MATSON,

              Plaintiff,

    v.

UNITED PARCEL SERVICE, INC.,

              Defendant.

CASE NO. C10-1528 RAJ

ORDER

## I.   INTRODUCTION

This matter comes before the court on defendant United Parcel Service, Inc.'s ("UPS") motion for judgment as a matter of law, or, alternatively, for a partial new trial. Dkt. # 145. At the close of plaintiff's case-in-chief, UPS moved the court for judgment as a matter of law pursuant to Rule 50(a). Fed. R. Civ. P. 50(a). The court ultimately denied the motion. Following trial, the jury returned a verdict finding no discrimination or retaliation, but finding that defendant subjected Ms. Matson to a hostile work environment based on her gender, and awarding her $500,000.00 in emotional harm. Dkt. # 125. Consequently, only Ms. Matson's hostile work environment claim and award of damages is at issue in defendant's motion. Defendant argues that the evidence adduced at trial required an interpretation of the Collective Bargaining Agreement

("CBA") as to the meaning of "extra work," and therefore Ms. Matson's claim with

respect to the assignment of "extra work" is preempted.  Ms. Matson argues that there

was no need to interpret the CBA because the evidence demonstrated that "work

assignments" were routinely assigned to male employees instead of female employees,

regardless of the meaning of "extra work."[1]

Having reviewed the memoranda, the trial transcripts, and the record herein, the

court GRANTS in part and DENIES in part defendant's motion for judgment as a matter

of law and motion for new trial.

## II. ANALYSIS

Pursuant to Rule 50(b), if the court does not grant a motion for judgment as a

matter of law pursuant to Rule 50(a), the moving party may renew its motion and may

include an alternative for new trial under Rule 59.  Fed. R. Civ. P. 50(b).

The issue before the court is whether the evidence presented at trial requires a

finding that plaintiff's hostile work environment claim is preempted by section 301 of the

Labor Management Relations Act ("LMRA").

Section 301 is a jurisdictional statute under which suits "for violation of contracts

between an employer and labor organization representing employees in an industry

affecting commerce . . . may be brought in any district court of the United States having

jurisdiction of the parties."  *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689

(9th Cir. 2001) (en banc) (quoting 29 U.S.C. § 185(a)).  Section 301 preempts all state-

law causes of action where their evaluation requires interpretation of a labor contract's

terms.  *Miller v. AT&T Network Sys.*, 850 F.2d 543, 545 (9th Cir. 1988) (citing *Allis-*

---

[1] Plaintiff appears to recast her argument for purposes of post-trial briefing as one of
"work assignments" generally as opposed to "extra work" being routinely assigned to male
coworkers with less seniority than her.  Plaintiff's claim has always been with respect to "extra
work," not "work assignments" generally, and she cannot now change the evidence presented at
trial or her theory of the case.

1   *Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)).  "Although its scope is substantial,

2   section 301 does not preempt every suit concerning employment."  *Id.*  Accordingly,

3   "'nonnegotiable state-law rights . . . independent of any right established by contract' are

4   not preempted."  *Id.*

5          To determine whether a state law is preempted, the court must first determine

6   whether the asserted claim involves a right conferred upon an employee by virtue of state

7   law, not by a CBA.  *Burnside v. Kiewitt Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).

8   To determine whether a particular right inheres in state law or is grounded in a CBA, the

9   court must consider the legal character of the claim, as independent of rights under the

10  CBA, and not whether a grievance arising from precisely the same set of facts could be

11  pursued.  *Id.* at 1060.  If the right exists independently of the CBA, the court must

12  consider whether it is nevertheless substantially dependent on analysis of a CBA.  *Id.* at

13  1059.  If such dependence exists, the claim is preempted.  *Id.*  To determine whether a

14  state law right is substantially dependent on the terms of a CBA, the court must determine

15  whether the claim can be resolved by "looking to" versus interpreting the CBA.  *Id.* at

16  1060.  A state law claim is preempted under section 301 if it necessarily requires the

17  court to interpret an existing provision of a CBA that can reasonably be said to be

18  relevant to the resolution of the dispute.  *Cramer*, 255 F.3d at 693.

19         In its moving papers, defendant does not dispute that Ms. Matson's claim for

20  gender-based hostile work environment is a nonnegotiable state law right.[2]  Rather,

21  defendant challenges the second prong of the analysis.  To find for plaintiff, the jury had

22  to find that "there was conduct that occurred because of Ms. Matson's gender"; "this

23

24  —————————————

25         [2] Although, in reply, defendant argues that Ms. Matson does not have a state law right to
    "extra work."  Defendant's attempt to reframe Ms. Matson's claim is unavailing.  Ms. Matson's
26  claim with respect to "extra work" has consistently been that UPS routinely distributed "extra
    work" to men with less seniority than her.  The legal character of this claim is gender
27  discrimination, not entitlement to all "extra work" irrespective of gender.

1   conduct was unwelcome in the sense that Ms. Matson regarded the conduct as

2   undesirable and offensive, and did not solicit or incite it"; "this conduct was so offensive

3   or pervasive that it altered the conditions of Ms. Matson's employment"; and

4   "management knew . . . of this conduct, and UPS failed to take reasonably prompt and

5   adequate corrective action reasonably designed to end it." Dkt. # 124 at 15 (Jury Instr.).

6          The "conduct" Ms. Matson complained of can fairly be segmented into two

7   categories: (1) conduct based on "extra work" assignments, and (2) other harassment on

8   the job because of her gender.[3]  *See Perugini v. Safeway Stores, Inc.*, 935 F.2d 1083,

9   1088 (9th Cir. 1991) (considering plaintiff's emotional distress claims as two segments

10  for purposes of preemption: (1) emotional distress caused by defendant's refusal to assign

11  plaintiff light work, and (2) emotional distress caused by defendant's on-the-job

12  harassment).

13  **A. "Extra Work" Assignments**

14         The term "extra work" is not defined in the CBA.  Defendant refers the court to

15  the addendum to the CBA, which relevant section provides:

16             C. Employer recognizes that the principles of seniority shall
            be given prime consideration for extra work.  Within each
17          building, each operational sort will maintain a list, by

18  _____

19     [3] Defendant also argues that the other harassment, such as management's hiding packages
    for men instead of giving them to her, giving her a less desirable van, or the heavy package
20  incident with management standing around also require interpretation of the CBA. Dkt. # 156 at
    9 ns. 8-10 (citing CBA provisions for assignment of work and seniority, vehicle assignments,
21  and handling packages over 70 pounds).  The court has reviewed the CBA provisions cited.
    There is nothing in the assignment of work and seniority provisions that requires interpretation
22  where Ms. Matson claims management hid packages from her only to give them to men.
    Similarly, section 1 of Article 18 addresses vehicle safety, dangerous conditions or vehicles that
23  violate laws, rules or regulations.  Nothing in this section, or in pages 45 through 54, address
    assigning more desirable vans to men, as opposed to the package car that she was assigned
24  temporarily.  Finally, Article 44, which addresses handling 70 pound packages, does not need to
    be interpreted where plaintiff testified that management failed to do anything and just stood there
25  laughing and joking with other employees when she requested help.  Defendant has not
    identified any term that needs to be interpreted, and the court finds none.  Accordingly, the court
26  finds that these three incidents are not preempted.

27

1

2

3

4

5

6

> seniority, of those employees requesting extra work on another sort. It will be the employees' responsibility to sign up on the appropriate list(s) through the appropriate manager(s). These lists shall be a one-time permanent sign-up list which interested employees are allowed to sign on to at any time. It will be the employees' responsibility to make sure the employees' contact information is correct on all extra work lists they sign on. When extra work is available, the Company will use the appropriate list to fill the required positions. . . .

7

Tr. Ex. 111 at 239 (Addendum to CBA, Art. 1, section 4, subsection C).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Ms. Matson testified that she believed "extra work" included packages to be delivered to your geographical area that were not dispatched in the morning, packages that may be available when a driver came back from driving, or "sort work" from late arrival packages. Dkt. # 138 at 140:15-141:17. UPS witness Linda Mizumoto testified that "extra work is a special shift" and not "normal dispatch" or just part of servicing the customer. Dkt. # 142 at 63:16-18, 64:4-7, 64:17-22. UPS witness Geoffrey McKenzie testified that "extra work" is "work assigned outside of the normal dispatch, the normal operating day, something that comes in later, something that is found after the operation is done and we have to make service on. Dkt. # 143 at 21:9-12. UPS witness Janie Norton testified that "service failure" packages (those that come in after the drivers have left) and "send again" packages (those where the driver makes two attempts and bring back) are assigned to the first driver back.[4] Dkt. # 142 at 137:3-138:9. Ms. Norton did testify that packages that were sent to Kirkland were not considered extra work because they were part of regular dispatch.[5] *Id.* at 138:21-25; *see also* Dkt. # 143 at 30:24-31:5

23

24

25

26

27

_____

[4] Although Ms. Norton provides an example of what she understands to be "extra work," she does not specifically exclude service failures and send again packages as a type of "extra work."

[5] On direct examination, Ms. Matson referred to the Kirkland packages as "extra packages" in response to a question about "extra work." The court finds that this testimony is inconsistent with Ms. Norton's testimony, which would require a resolution as to the meaning of "extra work." Dkt. # 138 at 162:5-22.

(Geoffrey McKenzie testifying that packages assigned early in the day to an unassigned route was normal dispatch, not extra work).  Most of Ms. Matson's testimony on direct examination regarding "extra work" is consistent with the testimony of UPS witnesses.  However, on rebuttal Ms. Matson specifically disputed UPS's interpretation of "extra work" and conceded that it "is a very muddy area[.]"  Dkt. # 143 at 43:9-44:6, 44:18-45:15, 85:19-86:3.  The court wholeheartedly agrees with UPS that Ms. Matson's testimony on rebuttal put the interpretation of extra work under the CBA directly in dispute.  Ms. Matson's rebuttal testimony is the primary reason for the court's reconsideration of the preemption issue.

Given Ms. Matson's testimony on rebuttal and with respect to the Kirkland packages, the court finds that plaintiff's claim for hostile work environment with respect to "extra work" assignments is substantially dependent on analysis of the CBA because the court would have to interpret the meaning of "extra work."  Accordingly, her hostile work environment claim is preempted to the extent it relies on her claim of "extra work" assignments.

**B.  Other Conduct**

Stripped of the "extra work" assignments, Ms. Matson's claim for hostile work environment is supported by the following evidence that management:  (1) disregarded her complaints of hostility in the work place (Dkt. # 139 at 10:20-11:10); (2) yelled at her (Dkt. # 138 at 178:23-179:5; (3) threatened to file charges against her if she continued to complain (Dkt. # 138 at 178:6-21, # 139 at 10:20-11:5); (4) failed and refused to do anything when she requested help to move a 150-pound package, and instead "clenched up his fists, put them behind his back, and stepped right into my face, gritted his teeth, and said 'you get to deliver it, don't you?'"  (Dkt. # 138 at 155:14-156:13); (5) failed to report or otherwise resolve a physical assault on Ms. Matson prior to Ms. Matson reporting it to a separate manager (Dkt. # 139 at 38:13-39:7, 39:19-40:16); (6) assigned her a less desirable package car instead of a van where all the men had the more desirable

1   vans (Dkt. # 138 at 179:16-180:8); (7) humiliated her at a termination meeting at which

2   seven men at the meeting accused her of lying and stealing time (while not also charging

3   a male co-worker with stealing time for the same incident) and at least one yelled at her

4   (Dkt. # 138 at 184:20-24, 185:14-16 187:13-188:4; # 139 at 6:21-7:12, 195:2-24, 196:10-

5   16); and (8) openly mocked her in front of her co-workers (Dkt. # 138 at 156:9-13,

6   178:23-179:5; # 139 at 10:2-19, 195:2-24).

7            The court finds that a question of fact exists with respect to whether, when all the

8   "extra work" allegations are disregarded, the other conduct on the part of management

9   was "severe and pervasive."

10           Additionally, Ms. Matson presented sufficient evidence for a trier of fact to

11   determine that the hostile work environment was because of her gender.  *See Payne v.*

12   *Children's Home Soc. of Wash., Inc.*, 77 Wash. App. 507, 514, 892 P.2d 1102 (1995)

13   (quoting *Glasgow*, 103 Wash. 2d at 406) ("In determining whether harassment occurs

14   'because of sex', the appropriate question is:  'would the employee have been singled out

15   and caused to suffer the harassment if the employee had been of a different sex?'").

16   When asked whether UPS managers treated men and women equally in their day-to-day

17   work, Judy Wheeler, one of Ms. Matson's co-workers, responded "[a]bsolutely not."

18   Dkt. # 140 at 11:7-9.  Additionally, a male co-worker who was involved in the same

19   incident of stealing time for which Ms. Matson was accused was not charged with

20   stealing time, and the men received more desirable vans while she temporarily received a

21   less desirable package car.  Given this evidence, the question of whether the conduct of

22   management created a hostile work environment because of Ms. Matson's gender is a

23   question of fact for the jury.

24           Accordingly, the court GRANTS defendant's alternate motion for a new trial with

25   respect to the non-extra work assignment conduct.  Given the jury's verdict rejecting two

26   of the three claims, and the court's ruling on preemption with respect to the third claim,

27   the court finds that the evidence clearly does not support the award, and the amount of

1   $500,000.00 for emotional harm is grossly excessive.  *See Blanton v.Mobile Oil Corp.*,

2   721 F.2d 1207, 1216 (9th Cir. 1983) (court will not reverse jury's assessment of amount

3   of damages unless amount is grossly excessive or monstrous, evidence clearly does not

4   support damage award, or award could only have been based on speculation or

5   guesswork.).  Accordingly, the question of damages must be tried again as well.

### III. CONCLUSION

7          For all the foregoing reasons, the court GRANTS in part and DENIES in part

8   defendant's motion for judgment as a matter of law and new trial.  The Clerk is

9   DIRECTED to set trial for July 1, 2013, and enter an amended case schedule with pre-

10  trial deadlines.  The only issue that will be tried is plaintiff's hostile work environment

11  claim based on conduct not related to "extra-work" assignments.  The court also has

12  before it plaintiff's motion for attorney's fees as prevailing party. Dkt. # 129.  The

13  court's finding of preemption and requiring new trial on the non-preempted conduct

14  MOOTS plaintiff's motion.  The Clerk is DIRECTED to terminate the motion.  Dkt. #

15  129.

16

17       Dated this 13th day of February, 2013.

18

19                                                *Richard A Jones*

20                                                The Honorable Richard A. Jones
                                                  United States District Judge

21

22

23

24

25

26

27