HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY MATSON,

    Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

CASE NO. C10-1528 RAJ

ORDER

On November 5, 2013, the court held a pretrial conference. During the conference, the court indicated that it would take two issues under submission: (1) whether defendant may call Doug Christensen as a rebuttal witness if Ms. Matson testifies about the choking incident, where he was not previously disclosed as a witness by defendant; and (2) whether defendants should be permitted to assert four defenses not previously asserted in the pretrial order or proposed jury instructions during the first trial. The court requested additional briefing, not to exceed three pages, regarding the former. Defendant submitted a brief in support of its position regarding the latter, and the court granted plaintiff the opportunity to respond in writing. The court has reviewed all materials submitted.

ORDER- 1

### A. Mr. Christensen as a Rebuttal Witness

Defendant argues it should be permitted to call Mr. Christensen as a rebuttal witness because it could not have foreseen the need to identify him prior to Ms. Matson's testimony at trial. Dkt. # 208. Plaintiff argues that UPS had knowledge that plaintiff would testify about the choking incident involving Mr. Christensen during discovery, and defendant's failure to disclose him as a witness for the first trial should preclude UPS from disclosing him as a rebuttal witness for the retrial. Dkt. # 206.

Rule 37(c)(1) provides that a party failing to provide information or identify a witness as required by Rule 26(a) or (e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. Proc. 37(c)(1); *Hoffman v. Lopez*, 541 F.3d 1175, 1179 (9th Cir. 2008). Parties are required to provide the name and contact information of any individual likely to have discoverable information "that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. Proc. 26(a)(1)(A)(i). Parties are also required to provide the other party the name and contact information of any witnesses, "separately identifying those the party expects to present and those it may call if the need arises." Fed. R. Civ. Proc. 26(a)(3)(A)(i). Parties are also required to supplement these disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. Proc. 26(e)(1)(A).

The court has broad discretion "to manage the cases before it efficiently and effectively." *See Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("The abuse of discretion standard is deferential, and properly so, since the district court needs the authority to manage the cases before it efficiently and effectively."). "Parties must understand that they will pay a price for failure to comply strictly with scheduling

ORDER- 2

and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence." *Id.*

Here, UPS was alerted to the potential need for Mr. Christensen to testify as a witness during discovery. In her complaint, plaintiff alleged that in December 2009, "one of defendant's male employees assaulted plaintiff on the job, injuring the plaintiff." Dkt. # 1 at 8 (Compl. ¶ 9). On January 28, 2011, plaintiff responded to defendant's first interrogatories and requests for production. Defendant propounded interrogatory 1: "To the extent not already identified in your initial disclosures, please identify each person who you believe has knowledge that relates to the allegations in your Complaint and summarize the knowledge that you believe each person has." Dkt. # 200-3 at 5. Plaintiff responded, among others, "Doug Christensen –Early AM Driver (EAM) co-worker (Guy who choked me) – knowledge of discrimination, retaliation, harassment." Dkt. # 207-2 at 2. On June 16, 2011, plaintiff propounded her first set of interrogatories and requests for documents, and asked, among others, the following:

> INTERROGATORY NO. 13: Please describe UPS' policies and procedures, whether formal or informal, regarding workplace violence, including physical assaults, threats of physical assaults, and verbal altercations, in place at BFI during the time period of the Plaintiff's employments, including in your answer any changes or updates to such policies and procedures.
>
> * * *
>
> REQUEST FOR PRODUCTION NO. 20: Produce the documents referring or relating to incidents of workplace violence and security issues or other problems between UPS employees, including, but not limited to, physical assaults, threats of physical assault, or verbal altercations, at BFI for the time period that the Plaintiff was employed by UPS.
>
> * * *
>
> REQUEST FOR PRODUCTION NO. 21: Produce the documents referring or relating to the physical incident that occurred between Doug Christensen and the Plaintiff, including, but not limited to, any warnings, reprimands,

   memoranda, notes, reports, intra- and inter-office communications, and termination or resignation documents.

Dkt. # 207-1 at 17.

  Given the fact that plaintiff alleged a physical assault in her complaint, disclosed the choking incident with Christensen during discovery as evidence of discrimination, retaliation, and harassment, and sought discovery regarding the choking incident and defendant's policies and procedures regarding physical assaults, the court finds that defendant was not substantially justified in failing to name Christensen as a witness for the first trial.[1] Defendant also argues that Ms. Matson's testimony that was admitted over objections included double hearsay.  Dkt. # 208 at 3.  However, the only objections raised by defendant at trial to this line of testimony were relevance and prejudice.  Dkt. # 139 at 11:6-17, 34:11-24).  Defendant did not raise a hearsay objection during trial.  The court overruled the relevance and undue prejudice objections because the choking incident and management's conduct following the incident were relevant to plaintiff's hostile work environment claim, and while a degree of prejudice existed, the court found that the undue prejudice standard had not been met.  *Id.* at 36:6-24.

  In arguing that the delay in identifying Mr. Christensen as a witness is harmless, defendant attempts to shift the burden of discovery on Ms. Matson.  However, at the time that defendant identified Mr. Christensen as a witness in June 2013, discovery had long been closed.  Matson could not seek discovery of Mr. Christensen, as doing so would have violated a court order setting the deadline for discovery as January 20, 2012.  Dkt. # 21.  Defendant also attempts to shift blame to plaintiff by arguing that she knew that Mr. Christensen could be called as a witness because she identified him as having knowledge about the case in her discovery responses.  Dkt. # 208 at 2.  However, it is defendant's

---

[1] Needless to say, the court also finds that Ms. Matson's testimony regarding the choking incident was neither "new" nor previously undisclosed.

responsibility to disclose all witnesses it may call at trial. Fed. R. Civ. Proc. 26(a)(3)(A)(i). Failing to disclose Mr. Christensen as a potential witness deprived plaintiff of the opportunity to depose Mr. Christensen. Accordingly, the court finds that the failure is not harmless.

For all the foregoing reasons, the court excludes Mr. Christensen as a witness.

**B. Defendant's Additional Defenses**

On February 13, 2013, the court found that Ms. Matson's claim for hostile work environment is supported by the following evidence that management: (1) disregarded her complaints of hostility in the work place (Dkt. # 139 at 10:20-11:10); (2) yelled at her (Dkt. # 138 at 178:23-179:5; (3) threatened to file charges against her if she continued to complain (Dkt. # 138 at 178:6-21, # 139 at 10:20-11:5); (4) failed and refused to do anything when she requested help to move a 150-pound package, and instead "clenched up his fists, put them behind his back, and stepped right into my face, gritted his teeth, and said 'you get to deliver it, don't you?'" (Dkt. # 138 at 155:14-156:13); (5) failed to report or otherwise resolve a physical assault on Ms. Matson prior to Ms. Matson reporting it to a separate manager (Dkt. # 139 at 38:13-39:7, 39:19-40:16); (6) assigned her a less desirable package car instead of a van where all the men had the more desirable vans (Dkt. # 138 at 179:16-180:8); (7) humiliated her at a termination meeting at which seven men at the meeting accused her of lying and stealing time (while not also charging a male co-worker with stealing time for the same incident) and at least one yelled at her (Dkt. # 138 at 184:20-24, 185:14-16 187:13-188:4; # 139 at 6:21-7:12, 195:2-24, 196:10-16); and (8) openly mocked her in front of her co-workers (Dkt. # 138 at 156:9-13, 178:23-179:5; # 139 at 10:2-19, 195:2-24). Dkt. # 159 at 6-7.

In its proposed pretrial order that was filed on October 29, 2013, defendant identified four affirmative defenses it had not identified in its pretrial order that preceded

1  the first trial: (1) plaintiff incited[2] the conduct she alleges constituted a hostile work
2  environment; (2) plaintiff failed to exhaust her administrative remedies; (3) plaintiff has
3  no evidence that the remaining allegations occurred because of her gender; and (4)
4  plaintiff's claims are not sufficiently related as to coalesce into a single hostile work
5  environment claim. *Cf.* Dkt. # 194 at 3 *with* Dkt. # 85 at 2.[3]

6        Defendant argues that plaintiff's current hostile work environment claim was
7  crafted during trial, and that the following allegations were not disclosed prior to trial:
8  (1) Eric Candelaria disregarded her complaints of hostility in the workplace; (2) Mr.
9  Candelaria yelled at her; (3) Mr. Candelaria threatened to file charges against her; (4) Ms.
10 Matson was mistreated during the investigatory meeting; and (5) UPS management failed
11 to report or resolve a physical assault on Ms. Matson. Dkt. # 199 at 3. However, it
12 appears from the record that sufficient information was disclosed during discovery that
13 would have put UPS on notice regarding the nature of her allegations. *See* Trial Ex. 14[4]
14 (Norby's notes during Matson interview indicating two women and four men present
15 questioning her about falsifying records); Trial Ex. 36[5] (memoranda regarding choking
16 incident); Trial Ex. 140[6] (Nov. 2009 letter to Mr. Candelaria describing complaints of

---

[2] The court notes that one of the elements of the hostile work environment instruction provides that "this conduct was unwelcome in the sense that Ms. Matson regarded the conduct as undesirable and offensive, and did not solicit or incite it."

[3] The court notes that in the June 25, 2012 pretrial order, plaintiff appears to have limited her hostile work environment claim to "assignment of work and vehicles." Dkt. # 85 at 2. However, her trial brief indicated the existence of other allegations that supported her claim: "Hostile Work Environment on the Basis of Gender: UPS' managers used, *inter alia*, work assignments that favored male UPS employees as a means to harass Ms. Matson and create a hostile work environment for female employees." Dkt. # 86 at 15.

[4] Exhibit 14 bears the bate-stamp UPS 0113, indicating that UPS produced this document during discovery.

[5] Exhibit 36 bears the bate-stamp UPS 1041, indicating that UPS produced this document during discovery.

[6] Exhibit 140 bears the bate-stamp PLTF 1757, indicating it was produced by plaintiff during discovery.

ORDER- 6

hostility and yelling); Dkt. # 204, Ex. A (Matson Depo. at 186:9-189:4 (choking incident) at 191:1-13 (Candelaria yelling at Matson).

The court notes that defendant has not directed the court to any objections it made to the introduction of evidence that it claims was not previously disclosed during the first trial.  Nevertheless, the first three defenses appear to be encompassed within affirmative defenses asserted in defendant's amended answer: "2.  Plaintiff's alleged harms and injuries were contributed to or caused by Plaintiff's own actions, omissions, misconduct, or negligence"; "3.  Plaintiff has failed to exhaust her contractual and/or administrative remedies"; "6. Plaintiff's claims are barred, in whole or in part, because Defendant's actions with respect to Plaintiff were in good faith based upon legitimate non-discriminatory and non-retaliatory factors unrelated to any unlawful purpose or bias." Dkt. # 16-1 at 4-5.  Accordingly, the court will allow defendant to pursue these affirmative defenses.

With respect to the last "defense," the court believes that defendant has not raised a legally cognizable defense.  Defendant argues that a hostile work environment claim requires allegations that are "sufficiently related" as to coalesce into a single hostile work environment claim.  Dkt. # 199 at 6.  However, the cases that are binding on this court are statute of limitations cases, and the court is not persuaded by the courts from the District of Columbia Circuit.[7]  In *Antonius v. King County*, 153 Wash. 2d 256, 268, 103 P.3d 729 (2005), the Washington Supreme Court adopted the reasoning and language of the Supreme Court in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101

---

[7] In *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011), the court, quoting selective portions from *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002) affirmed the district court's conclusion that acts giving rise to a hostile work environment claim must be adequately connected to each other, as opposed to being an array of unrelated discriminatory acts, irrespective of the limitations issue.  This court respectfully disagrees with *Baird*, and does not believe that the Ninth Circuit or the Washington Supreme Court would follow *Baird*'s broad reading of *Morgan* for the reasons stated below.

(2002) to determine whether an employer is liable for hostile work environment conduct that occurred more than three years before the plaintiff filed suit.

In *Morgan*, the Supreme Court granted *certiori* to resolve a circuit split regarding whether acts that fall outside of a statutory time period for filing charges set forth in 42 U.S.C. § 2000e-5(e)[8] are actionable under Title VII. *Id.* at 108. The Court identified two critical questions it had to resolve for both discrete discriminatory acts and hostile work environment claims: "What constitutes an 'unlawful employment practice' and when has that practice 'occurred'?" *Id.* at 110. The court identified the difference between "discrete acts" and a hostile work environment claim. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. In contrast, hostile environment claims by [t]heir very nature involve[] repeated conduct." *Id.* at 115. "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* Hostile environment "claims are based on the cumulative effect of individual acts." *Id.*

The Supreme Court held that discrete discriminatory acts are not actionable if time barred, even if they are related to acts alleged in timely filed charges, and that each discrete discriminatory act starts a new clock for filing charges. *Id.* at 113. The Supreme Court also indicated that where incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim, even if the act occurred outside of the limitations period. *Id.* at 118. When determining whether a charge is timely filed, the "court's task is to determine

---

[8] Section 2000e-5(e)(1) requires an employee to file a charge with the EEOC within 300 days of the employment practice in a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, or 180 days for all other States.

ORDER- 8

whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* at 120.

The Washington Supreme Court relied on and adopted *Morgan*'s reasoning and holdings to determine whether the trial court properly granted summary judgment as to any acts allegedly occurring more than three years before suit was filed. *Antonius*, 153 Wash. 2d at 270. The Court, quoting *Morgan*, found:

> The acts must have some relationship to each other to constitute part of the same hostile work environment claim, and if there is no relation, or if 'for some other reason, such as certain intervening action by the employer' the act is 'no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts' as part of one hostile work environment claim.

*Id.* at 271.

The court finds that *Antonius* and *Morgan* do not stand for the broad proposition asserted by defendant that a hostile work environment claim requires that all the acts be "sufficiently related" to constitute the same hostile work environment claim, irrespective of the limitations issue.[9] Rather, *Antonius* and *Morgan* apply when a defendant asserts the statute of limitations as a defense, and the court must determine whether certain acts are time barred. Only then does the "sufficiently related" framework apply to determine

---

[9] Indeed, if such a requirement existed, the court believes that the countless cases reciting the elements required to establish a claim for hostile work environment would have included such a requirement. Instead, case after case has repeatedly held that to prevail on a claim for hostile work environment under the Washington Law Against Discrimination, plaintiff must prove that the harassment (1) was unwelcome, (2) was because of her sex, (3) affected the terms and conditions of her employment, and (4) is imputable to defendant. *Antonius*, 153 Wash. at 261. The court has not found a single Washington or Ninth Circuit case that adds a fifth requirement that all the acts within the limitations period be "sufficiently related" to constitute the same hostile work environment claim. Such a requirement is also not reflected in the Washington Pattern Instructions or Ninth Circuit Model Instructions for hostile work environment. WPI 330.23; 9th Cir. Manual of Model Civ. Jury Instructions 10.2A-C.

1  whether the acts that make up the hostile environment claim that occurred outside the
2  limitations period are time-barred.  Defendant does not assert a statute of limitations
3  defense or otherwise indicate that any of plaintiff's remaining allegations are barred by
4  the statute of limitations.[10]

5        Accordingly, the court DENIES defendant's request to assert a "defense" that
6  plaintiff's hostile work environment claim is composed of unrelated incidents that cannot
7  be connected to constitute the same hostile work environment claim.

9        Dated this 8th day of November, 2013.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge

---

[10] Nevertheless, the court believes that plaintiff's remaining allegations constitute non-discrete acts as defined by *Antonius* and *Morgan*.