HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY MATSON,<br><br>            Plaintiff,<br><br>   v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>            Defendant. | CASE NO. C10-1528 RAJ<br><br>ORDER |

     This matter comes before the court on objections raised by UPS during trial.  UPS argues, among other things, that testimony regarding the 70-pound service package incident is preempted because Ms. Matson has argued and presented evidence that it was "extra work" and because Ms. Matson's request for assistance and Mr. McKinney's refusal is substantially dependent on an analysis of the Collective Bargaining Agreement ("CBA").  Dkt. # 220 at 9-12.  Ms. Matson argues that under UPS's own definition, the package at issue in this incident was not considered "extra work" and that the issues surrounding the overweight package is independent of the CBA.  Dkt. # 221 at 1-5.

     In response to Interrogatory 4, which requested the basis of every instance of alleged discrimination in the terms and conditions of employment on the basis of sex, Ms.

ORDER- 1

Matson responded, in part, by stating that the heavy package was addressed for Kirkland delivery, which was extra work:

> 5-13-08  I was loading vehicles in my work area (EAM vehicle area) prior to deliveries.  I noticed **a large heavy package that was addressed for Kirkland delivery (which was extra work** as there was no route driver for Kirkland) which is adjacent to my route.  It was set aside while we loaded the regular deliveries.  Since Mike Frausto was the most senior driver of those with adjacent routes he had first dibs [sic] on that delivery.  Later I noticed him and Jeff Bernave just loading it into directly into [sic] Bernave's truck, although I was the next most senior.  I asked Brian why it was being put in Bernave's van.  He said it's already in the van. I said this is discrimination **you keep giving the extra work to the men**. Brian then walked over to Bernave's van and told them you'll have to give it to Mary.  JB and Mike Frausto were allowed to push the package out onto the ground.  Brian McKinney watched close by while they did it.  When I asked Brian to get me help loading the package, as we are required to do, he did nothing and didn't get me any help loading the package, as we are required to do, he did nothing and didn't get me any help although Bernave and Frausto were standing right there.  Brian got up in my face (literally) gritted his teeth, put his arms behind his back, pushed out his chest close to mind and said "you get to deliver it don't you!"  He then stood about 8 feet away with JB and Mike Frausto and laughed while watching me struggle with Milton Chambliss. . . ."

Dkt. # 191-1 at 32 (emphasis added).

During the first trial, Ms. Matson testified, without objection, largely the same as her interrogatory response. Dkt. # 138 at 154:8-156:17.  Ms. Matson also previously testified at the first trial, without objection, that the Kirkland packages were "extra work" because they were not assigned to a specific route. Dkt. # 138 at 140:15-141:12; Dkt. # 143 at 43:13-44:6.  Additionally, during plaintiff's opening statement in the first trial, plaintiff's counsel referred to the heavy package as "extra work." Dkt. # 138 at 95:22-97:5.

In contrast, UPS employees testified that the heavy package was not "extra work." *See* Dkt. # 142 at 63:16-64:22 (Ms. Mizumoto testifying that extra work is a special shift and not normal dispatch); Dkt. # 143 at 21:9-12 (Mr. McKenzie testifying that extra work

is work assigned outside of the normal dispatch, the normal operating day, something that comes in later, something that is found after the operation is done and we have to make service on); Dkt. # 143 at 30:24-31:5 (Ms. Norton testifying that extra work consisted of packages that come in after the drivers have left and send again packages); Dkt. # 142 at 136:14-138:9 (Ms. Norton testifying that Kirkland packages were not considered extra work and were regular dispatch).

This conflict in testimony in the prior trial regarding the meaning of "extra work" is exactly why the court preempted the "extra work" allegations because the court would be required to interpret a term within the CBA.  The court recognizes that it previously ruled that Defendant had not identified any term that needed to be interpreted, and the court found none.  Dkt. # 159 at 4.  However, defendant has now directed the court to relevant evidence demonstrating that the court would need to interpret the term "extra work."

Given that UPS has now directed the court to this relevant evidence that Ms. Matson referred to this heavy package as "extra work," the court finds that that Ms. Matson's testimony regarding the assignment of the heavy package is included within the court's order that plaintiff's claim for hostile work environment with respect to "extra work" assignments is substantially dependent on analysis of the CBA because the court would have to interpret the meaning of "extra work."  Dkt. # 159 at 4-6.

The court notes that although plaintiff represents that she will testify differently in this trial –that the overweight package was assigned early in the day as part of normal dispatch –that does not change her testimony in the prior trial, which is directly contradictory to her purported new testimony.  Accordingly, Ms. Matson's testimony regarding the assignment of the heavy package is preempted.

Additionally, the CBA outlines specific rights and responsibilities regarding the handling of any package over 70 pounds.  Tr. Ex. 111 at 162-64, Art. 44.  Ms. Matson's testimony regarding her request for assistance and Mr. McKinney's refusal to assist her

would require the court to interpret Article 44 to determine whether she was "required to handle any over 70 pound packages alone" and whether Ms. Matson made a "good faith" request for "[a]nother bargaining unit employee" to assist.[1] Accordingly, this testimony is also preempted.

However, Ms. Matson's testimony regarding Mr. McKinney's physical reaction that he balled up his fist, got really mad, put his fists behind his back as if to restrain himself, gritted his teeth, and got in her face is not substantially dependent on the interpretation of any term in the CBA, and is thus not preempted.

Dated this 15th day of November, 2013.

The Honorable Richard A. Jones
United States District Judge

---

[1] To the extent the court stated otherwise in footnote 3 of Dkt. # 159, the court reverses that determination now that it has received sufficient briefing on this issue.