UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY MATSON,<br><br>            Plaintiff,<br><br>   v.<br><br>UNITED PARCEL SERVICES, INC.,<br><br>            Defendant. | CASE NO. C10-1528 RAJ<br><br>ORDER |

This matter comes before the Court on Plaintiff Mary Matson's ("Plaintiff") Second Petition for Fees and Costs. Dkt. # 271. For the reasons set forth below, the Court **GRANTS IN PART** Plaintiff's Second Fee Petition.

**I.    BACKGROUND**

In September 2010, Plaintiff brought a state court action under Washington's Law Against Discrimination ("WLAD") against her former employer UPS. Dkt. # 1. UPS removed the action to federal court based on diversity of citizenship. *Id*. The Court granted UPS's motion for summary judgment on Matson's race discrimination, race-based hostile work environment, and wrongful discharge claims. Dkt. # 70.

This matter then went to trial for the first time. After the first trial, the jury returned a verdict in favor of UPS on Plaintiff's claims for discrimination and retaliation. Dkt. # 125. The jury found, however, that UPS subjected Plaintiff to a hostile work environment on the basis of her gender and awarded Plaintiff $500,000 in emotional damages. *Id.*

On August 2, 2012, Plaintiff filed the First Fee Petition and requested fees and costs accrued between February 12, 2011 and August 2, 2012. Dkt. # 129. Plaintiff then requested a fee multiplier of 1.5. *Id*. On August 16, 2012, UPS filed a motion for judgment as a matter of law under Rule 50(b). Dkt. # 145. The Court granted UPS's motion for a new trial on the ground that the gender-based hostile work environment claim was preempted under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Dkt. # 145. In doing so, the Court terminated Plaintiff's First Fee Petition as moot. *Id*.

After the second trial, the jury found in favor of UPS on the hostile work environment claim, awarding Plaintiff no damages. Dkt. # 234. Plaintiff appealed. Dkt. # 241. The United States Court of Appeals for the Ninth Circuit reversed the Court's preemption finding. *Matson v. United Parcel Service, Inc.*, 840 F.3d 1126 (9th Cir. 2016) (Case No. 13-36174). The Court of Appeals reinstated the jury verdict from the first trial and remanded the matter "for reconsideration of the damages question." *Id*. at 1137.

On November 3, 2017, this Court granted Plaintiff's request to reinstate the initial jury verdict of $500,000 from the first trial. Dkt. # 266. The Court ruled that its prior finding of excessive damages rested on the assumption of preemption, which had then been found erroneous by the Ninth Circuit. *Id*. When including the evidence related to "extra work" assignments, the Court found that there was sufficient proof for the jury to arrive at its award. *Id*. Accordingly, on January 29, 2018, the Court entered judgment in favor of Plaintiff. Dkt. # 277.

On December 11, 2017, Plaintiff moved to recover its fees and petitions for the period between August 2, 2012 and December 12, 2017, reflecting post-trial motions and the second trial. Dkt. # 271. In this Second Fee Petition, Plaintiff requests a fee multiplier of 2.0. *Id.* UPS opposed and Plaintiff filed a Reply. Dkt. ## 275, 278.

Plaintiff had also moved to recover attorneys' fees and costs on appeal before the Ninth Circuit. *See Matson v. United Parcel Service, Inc.*, Case. No. 13-36174, Dkt. # 47-1. On March 7, 2018, the Court of Appeals awarded attorneys' fees and non-taxable costs in the amount of $218,355.75 to Plaintiff. Dkt. # 280.

## II. DISCUSSION

Where the court exercises jurisdiction over state law claims, it generally relies on state law regarding the recovery of attorney fees. *MRO Communications, Inc. v. AT & T Co.*, 197 F.3d 1276, 1281 (9th Cir.1999). The WLAD provides for an award of "the cost of suit including reasonable attorneys' fees" to the prevailing party. RCW 49.60.030(2).

### A. Plaintiffs Are Entitled to Fees From the Second Trial

Where the court exercises jurisdiction over state law claims, it generally relies on state law regarding the recovery of attorney fees. *MRO Communications, Inc. v. AT & T Co.*, 197 F.3d 1276, 1281 (9th Cir.1999). The WLAD provides for an award of "the cost of suit including reasonable attorneys' fees" to the prevailing party. RCW 49.60.030(2).

The parties first dispute whether Plaintiff is entitled to any fees related to the second trial. A plaintiff prevails when she obtains actual relief which materially modifies the defendant's behavior in a way that directly benefits the plaintiff. *Farrar v. Hobby*, 506 U.S. 103, 111-12, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992). The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought. *Farrar*, 506 U.S. at 110 (1992) (citing *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)). Moreover, a plaintiff need not succeed on all claims to achieve prevailing party status, as "[i]t is enough that plaintiffs received some of the benefit they sought in bringing the suit." *Clark v. City of Los Angeles*, 803 F.2d 987, 989 (9th Cir. 1986) (citations omitted).

Under Washington law, "[d]etermination of which party is the prevailing party, whether for the purpose of awarding costs or attorney fees, is made on the basis of which party has an affirmative judgment rendered in his favor at the conclusion of the entire case." *Moritzky v. Heberlein*, 40 Wash. App. 181, 183, 697 P.2d 1023, 1024–25 (1985). Similarly, for purposes of the WLAD, a plaintiff prevails when she succeeds in achieving the benefit sought in bringing the suit. *Wheeler v. Catholic Archdiocese of Seattle*, 124 Wash. 2d 634, 643, 880 P.2d 29, 34 (1994).

UPS argues that UPS, not Plaintiff, is the "prevailing party" under the WLAD because Plaintiff did not win at the second trial. Dkt. # 375 at 2-4. The Court disagrees. Plaintiff ultimately won on her hostile work environment claim, as the jury verdict of $500,000 against UPS has been reinstated. Dkt. # 277. Plaintiff is thus the "prevailing party" on this claim, even if she was temporarily unsuccessful for the time period between the second trial verdict and the Ninth Circuit Opinion. *Cf. Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("[A] plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage.").

Although the parties do not cite a Ninth Circuit or Washington case that is directly on point, Plaintiff cites to multiple authorities from other Circuits that have permitted attorneys' fees to be awarded to the prevailing party for multiple trials, "so long as 'the plaintiff's unreasonable behavior did not cause' the need for multiple proceedings and as long as counsel's time was reasonably expended." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 826 (6th Cir. 2013); *see also Abner v. Kan. City S. Ry. Co.*, 541 F.3d 372, 380 (5th Cir. 2008) (permitting party to recover fees for trial voided through no fault of party, noting that "[r]ather than looking at each trial in isolation, it is appropriate for a district court . . . to focus on the ultimate result of the case."); *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 338 F.3d 736, 740 (7th Cir. 2003) (holding that when the plaintiff is not responsible for the need of a second trial, the plaintiff may be compensated for time on

both proceedings). Plaintiff also cites a 9th Circuit case that held that in a situation where the Plaintiff won the first trial, but was awarded nominal fees in the second trial, and the first jury verdict was reinstated with instructions that "the fee award should be based on the first jury's damages award." *Silver Sage Partners, LTD v. City of Desert Hot Springs*, 251 F.3d 814, 826 (9th Cir. 2001).

The Court finds these authorities persuasive. UPS attempts to distinguish these cases by arguing that in each case the plaintiff won at the second trial. Dkt. # 275 at 5-6. While this observation is technically true, it does not appear to be legally significant, as it does not change the fact that in each case the court awarded attorney's fees to the ultimate prevailing party, as Plaintiff is here. Plaintiffs' fees costs associated with post-trial motions and the second trial were legitimate and not borne through any unreasonable behavior on the part of Plaintiff. The Court believes that it would be unfair to deny Plaintiff recovery of fees and costs that arose through no fault of her own. The Court also finds that permitting Plaintiff to recover the costs associated with the second trial, which only concerned the hostile work environment claim on which Plaintiff was ultimately successful, is more in line with the directives and policy goals of WLAD, where Washington courts allow "liberal recovery of costs by the prevailing party in civil rights litigation, in order to further the policies underlying these civil rights statutes." *Blair v. Wash. St. Univ.*, 740 P.2d 1379, 1387 (Wash. 1987).

Accordingly, Plaintiff is entitled to fees and costs associated with the second trial.

**B. The Court Grants In Part Plaintiff's Requested Fees**

In Washington, courts use the lodestar method to determine a reasonable attorney fee award. *Mahler v. Szucs,* 135 Wash.2d 398, 957 P.2d 632, 650–51 (1998). The Court must determine a lodestar by multiplying a reasonable hourly rate or rates by the number of hours reasonably expended in the litigation. *Id.* at 651. The party seeking fees bears the burden of proof. *Id.*

*1. Reasonable Rate*

Determining a reasonable hourly rate requires the Court to consider the attorney's usual fee, the attorney's level of skill and experience, the amount of the recovery, and the "undesirability of the case." *Bowers v. Transamerica Title Ins. Co.,* 100 Wash.2d 581, 675 P.2d 193, 203 (1983). The Court can also consider the customary hourly rates in the local area, the effect of the case on the attorney's availability for other work, whether the case is particularly complex or difficult, and a host of other factors. *Mahler,* 957 P.2d at 651 n. 20. The presumptive reasonable hourly rate for an attorney is the rate the attorney charges. *Broyles v. Thurston Cty.*, 195 P.3d 985, 1004 (Wash. Ct. App. 2008). The applicable geographic area for determining a reasonable hourly rate for Plaintiffs' counsel is the entire Puget Sound region. *Id.* The Court may also rely on its own knowledge and experience regarding fees charged in the area in which it presides. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

According to the evidence provided in support of Plaintiff's Second Fee Petition, Plaintiff is requesting 1350.8 hours of work from August 2, 2012 to the present at hourly rates of $90 to $465 by fourteen different timekeepers, as follows (Dkt. # 272 at 2; Dkt. # 272-1 at 2):

| Timekeeper | Title | Hourly Rate | Hours Worked |
|---|---|---|---|
| **Mark Davis** | Partner | $285 | 4.3 |
| **Yonten Dorjee** | Legal Assistant | $90 | 3.2 |
| **Alexandra Evans** | Law Clerk | $150 | 8.3 |
| **Aubrie Hicks** | Associate | $210 | 124.4 |
| **Jacob Humphreys** | Associate | $245 | 491.9 |
| **Rachel Lewis** | Law Clerk | $150 | 82.8 |
| **Christina Limon** | Paralegal | $125 | 35.4 |
| **Donald Mullins** | Partner | $465 | 328.4 |
| **Stefanie Palmer** | Paralegal | $125 | 100.4 |
| **Ben Stephens** | Legal Assistant | $90 | 16.6 |
| **Mark Trivett** | Associate | $265 | 40.3 |
| **Collin Troy** | Contract Attorney | $210 | 10.5 |
| **Eleanor Walstad** | Associate | $230 | 93.7 |
| **Raam Wong** | Law Clerk | $125 | 10.6 |

Plaintiff's attorney submits in a declaration that these rates are the "same billing rates charged to [Plaintiff's attorneys'] hourly clients." Dkt. # 272 at p. 3, ¶ 6. Plaintiff also submits a Declaration of Kathleen Phair Barnard, a partner in the Seattle,

Washington employment law firm of Schwerin Campbell Barnard Iglitzin & Lavitt LLP. Dkt. # 273. Barnard states that she has familiarized herself with this matter and, in her opinion, the requested hourly rates are reasonable and in some cases slightly below the current market rate. Dkt. # 273 at 6-7. Barnard also claims that the hours expended were reasonable and Plaintiff's counsel are deserving of a Lodestar multiplier. *Id*. at 8-12.

In its Opposition, UPS does not appear to directly dispute the reasonableness of the rates. Instead, UPS contests that the Court should disregard the Barnard Declaration under Federal Rule of Evidence 702 because it is not based on sufficient facts or reliable principles. Dkt. # 275 at 13-14. The Court agrees with UPS, to some extent, that the Barnard Declaration is unnecessary and unhelpful. The portions of the Barnard declaration that concern the reasonableness of expended hours and the appropriateness of a fee multiplier are legal determinations for this Court, and Barnard's Declaration does not offer any particularly insightful observations on these points. However, the Court need not rely on these portions to make the determination that the rates are reasonable.[1] The Court observes that, based on this Court's experience, Plaintiffs counsel's rates are consistent with the rates charged by other lawyers in the Puget Sound area and approved by this Court. *See, e.g., Nat'l Prod., Inc. v. Aqua Box Prod., LLC*, No. 12-605-RSM, 2013 WL 12106900, at *2 (W.D. Wash. Mar. 15, 2013) ($465-485/partner, $205-300/associates, $120/paralegal). The Court of Appeals also determined that many of these claimed rates were reasonable. *See* Dkt. # 280 at 6-9 ($465/partner, $210-300/associate, $210/contract attorney, $150/law clerk, $150/paralegal, $110/legal assistant).

---

[1] The Court finds the Barnard Declaration minimally helpful in that it cites other fee awards in the region to justify the reasonableness of the rates, though these cases could have easily been cited by Plaintiff's counsel in the Second Fee Petition itself. *See* Dkt. # 273 at 6-8 (citing cases).

Accordingly, the Court finds all of the hourly rates that counsel claimed to be reasonable. In reaching that determination, the Court relies on declarations that the rates identified are the normal hourly rates, UPS' lack of opposition to the reasonableness of the rates, and on its familiarity with legal fees in the Western District of Washington.

*2. Reasonable Expended Hours*

Proof of an appropriate lodestar begins with reasonable documentation of the work the attorney performed. That documentation "need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (i.e. senior partner, associate, etc.)." *Bowers*, 675 P.2d at 203. In determining if the attorney "reasonably expended" the hours she claims, the court should "discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." *Id.*

In connection with Plaintiff's Second Fee Petition, Plaintiff requests $368,753.50 in attorneys' fees and $12,588.41 in costs. Dkt. # 271 at 10. Plaintiff also requests that the Court apply a multiplier of 2.0 to the lodestar. *Id*. at 11-12. Plaintiff contends that the requested hours are reasonable because the action was complex, aggressively litigated, and thoroughly briefed, and the counsel for UPS were skilled and highly regarded. *Id*.

UPS does not contest a large portion of Plaintiff's time entries, and the Court agrees that the uncontested entries largely appear reasonable. UPS has objected to certain time entries, namely (1) entries related to analysis of a malpractice claim against Matson's previous attorney; (2) entries related to fees and costs associated with Dr. Cathy Brown; (3) entries related to Plaintiff's appeal; (4) entries reflecting "clerical time"; (5) entries reflecting "vague, wasteful, or duplicative work; and (6) entries reflecting "block billing." Dkt. # 275 at 4-10.

The Court believes that some of UPS' objections have merit, and certain reductions in requested fees are warranted. The Court discusses each objection and reduction below.

   a. Malpractice Claim

UPS contends that Plaintiff seeks to recover $8,063.50 for time Plaintiff's counsel spent considering a malpractice claim against Plaintiff's previous attorneys, which UPS claims is unrelated to the present claim. Dkt. # 275 at 7. Plaintiff does not address UPS' argument on this point, and the Court agrees with UPS. Entries related to analyzing a possible malpractice claim do not relate to the pursuit of Plaintiff's successful hostile work environment claim. *See Conti v. Corp. Servs. Grp., Inc.*, 30 F. Supp. 3d 1051, 1078–79 (W.D. Wash. 2014), *aff'd*, 690 F. App'x 473 (9th Cir. 2017) ("The court's task is to make a reasonable estimate of how much time counsel expended in the pursuit of successful claims"). Although it is not clear that all of the entries UPS identifies wholly relate to the malpractice claim, Plaintiff does not dispute UPS' classifications of these entries, and has not provided sufficient detail in the entries to indicate that they were not related to the malpractice claim. Dkt. # 276 at 12, 21-22.

Accordingly, the Court disallows these entries and reduces Plaintiff's award by $8,063.50.

   b. Dr. Cathy Brown

UPS argues that Plaintiff should not be entitled to collect $6,009.50 and $149.50 in costs related to Dr. Cathy Brown, a witness that did not testify at the second trial and did not appear in related filings. Dkt. # 275 at 7.[2] Plaintiff does not respond to or contest UPS' argument on this point. The "mere fact that a witness did not testify does not render time spent with such a witness unreasonable." *Atwood v. PCC Structurals, Inc.*,

---

[2] Plaintiff apparently subpoenaed Dr. Brown for trial, but then later withdrew that subpoena. Dkt. # 178.

No. 3:14-CV-00021-HZ, 2016 WL 2944757, at *4 (D. Or. Apr. 1, 2016). Still, it is Plaintiff's burden to show how these costs were reasonably born in connection with litigating her successful work environment claim, and the Court cannot conclude from the evidence provided that the fees and costs associated with Dr. Cathy Brown qualify.

Accordingly, the Court will reduce certain entries and costs from Plaintiff's requested time that are associated with Dr. Cathy Brown. However, the Court does not agree that all of the entries UPS identified as relating to Dr. Brown relate *only* or even *mostly* to Dr. Brown, as some appear to partially relate to other legitimate tasks. *See* Dkt. # 276 at 13-16 (Slip # 223799, $1,999.50; Slip # 224083, $604.50; Slip # 224760, $2,418.00). Recognizing that the determination of attorneys' fees is an inherently imprecise exercise, the Court concludes that a reduction of 50% is warranted for these three entries. Moreover, the other entries UPS identifies as relating to Dr. Brown will already be disallowed by this Court for relating to clerical work, and the Court will not permit a double reduction for these entries. *Id*.

After careful review of all of UPS' challenged entries, the Court thus finds a reduction of $2,511 in fees and $149.50 in costs is warranted for work related to Dr. Brown.

  c. Appeal

UPS argues that Plaintiff should not be entitled to recover fees with this Court related to Plaintiff's appeal before the Ninth Circuit. Dkt. # 275 at 8. UPS contends that Plaintiff "already requested fees from the Ninth Circuit for her appellate work and attempting to recover time spent on her appeal from this Court is improper and risks duplicative recovery." *Id*. Plaintiff responds by arguing that what UPS identified as "appeal fees" were really fees "incurred researching and preserving grounds for appeal and requesting Fed. R. Civ. P. 54(b) certification and exploration of an interlocutory appeal." Dkt. # 278 at 5. Plaintiff contends that it does not seek duplicate fees through this petition. *Id*.

The Court agrees with Plaintiff. The entries UPS identifies as relating to the appeal all appear to concern Plaintiff's counsel's preparation for and research of the impending appeal, not fees and costs incurred through the appeal itself. Dkt. # 276 at 10, 28. These fees are reasonably related to Plaintiff's ultimate success in litigation before this Court. UPS warns of duplication with the Ninth Circuit fee petition, but does not identify any such duplicative entries. The Court has reviewed the time entries Plaintiff requested as part of its fee petition before the Ninth Circuit, and found no entries that were also requested as part of the present Second Fee Petition. *Compare* Dkt. # 276 *with Matson v. United Parcel Service, Inc.*, Case. No. 13-36174 (9th Cir. 2017) at Dkt. # 51-3.

Accordingly, the Court will not permit a reduction on this basis.

d. Clerical Work

UPS objects to 134.30 hours (totaling $16,094.50), billed by paralegals and assistants, of what it claims is "clerical time" that was "not legal in nature." Dkt. # 275 at 8. Plaintiff counters that some of the entries reflect "core attorney work," and that Plaintiff should not be punished for efficient use of support staff. Dkt. # 278 at 5. The Court finds that UPS' objection has partial merit.

A court can award fees where a paralegal performs legal (as opposed to clerical) work, does so under the supervision of an attorney, and is qualified "to perform substantive legal work." *Absher Constr. Co. v. Kent Sch. Dist.*, 79 Wash.App. 841, 917 P.2d 1086, 1088 (1995). However, paralegals and other assistants are not entitled to compensation for nonlegal work. *Id.* at 1089 (denying compensation for time spent preparing pleadings, preparing copies, and similar tasks; granting compensation for "time spent preparing the briefs and related work"); *see also N. Coast Elec. Co. v. Selig*, 136 Wash. App. 636, 645, 151 P.3d 211, 216 (2007) (compensation for clerical work like preparing pleadings for duplication, preparing and delivering copies, requesting copies, and obtaining and delivering a docket sheet is not within the realm of reasonable attorney fees).

Although Plaintiff contends that the time entries at issue were for legal rather than clerical work, a review of the time records confirms that much of the challenged work was clerical in nature. For instance, many of the claimed entries reflect clerical work such as scheduling, downloading, mail delivery, cite-checking, dictation, searching records and e-mails, preparation and review of transcripts, communicating with attorneys, printing notebooks, formatting, and typing up attorneys' questions. *See generally* Dkt. # 276. Plaintiff's counsel also claims hours worked by two legal assistants, both billed out at $90 an hour. The work performed by these two individuals, while necessary and by all accounts highly competent, does not appear to be compensable legal work.

However, Plaintiff is correct that some time entries from the paralegals indicate that the paralegals were performing core legal work under the supervision of attorneys. *See, e.g.*, Slip Nos. 0220814 ("Review CR 7(h). Conference with E. Walstad and J. Humphreys. Draft Proposed order"); 224194 ("Edit first 15 pages of client trial testimony. Draft trial subpoenas for L. Mizumoto and B. McKinney."); 229522 ("Research and locate requested case for D. Mullins."). These entries are more akin to recoverable legal work.

Accordingly, after a thorough review of Plaintiff's requested time entries and UPS' objections, the Court concludes that UPS is entitled to a reduction of $15,144.50 in the requested fees due to the clerical nature of the work.

e. <u>Vague, Wasteful, or Duplicative Work</u>

UPS argues that Plaintiff's entries are "replete" with "vague or overly generic time entries," making it difficult to determine their reasonableness. Dkt. # 275 at 8-9. UPS argues that $27,611.50 in fees should be excluded on this basis. *Id.* Plaintiff counters that entries that are seemingly "vague" gain the appropriate context when read in conjunction with other entries that are close in time. Dkt. # 278 at 4.

The Court agrees with Plaintiff. Plaintiff's counsel were not required to record in minute detail how each minute of time was expended, and Plaintiff's burden was satisfied

by listing the hours and identifying the general subject matter of the time expenditures. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). Plaintiff has largely accomplished this for nearly all entries UPS labels as "vague." Moreover, in some instances where Plaintiff has added more detail, UPS criticizes these entries as "block billing." *See*, e.g., Dkt. # 272-1 at 20 (Slip No. 224886). The Court is disinclined to grant either objection.[3]

UPS also complains generally that Plaintiff overstaffed this litigation with fourteen different timekeepers. Dkt. # 275 at 4. This Court does not agree. The second trial and post-trial practice in this case spanned multiple years; during this time, multiple individuals rotated in and out of case, and in some instances left the firm. Dkt. # 272 at 2-6. Moreover, as Plaintiff notes, much of the time entries are constrained to a limited number of timekeepers, with discrete tasks outsourced. This scenario does not strike the Court as abnormal.

Accordingly, the Court will not grant a reduction on this basis.

f. Block Billing

UPS requests a global 20% reduction for what it identifies as "block billing." Dkt. # 275 at 8. UPS, however, fails to show how the few alleged instances of "block billing" inflated Plaintiff's requested hours to any significant degree. While the Ninth Circuit has endorsed a district court's reduction of block billing, *see, e.g., Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), this Court finds that Plaintiff's counsel's entries "cover relatively limited amounts of time and give sufficient information for the Court to assess the nature of the work done." *See McEuen v. Riverview Bancorp, Inc.*, 2014 WL

---

[3] The Court notes one exception, Slip No. 224760, where the entry reflects that Plaintiff's counsel worked in part on issues related to Dr. Brown. As stated above, because Plaintiff's counsel does not delineate how much time in this block was devoted to this issue, the Court reduced this entry by 50%.

2197851 at *6 (W.D. Wash. May 27, 2014). The Court will not reduce the number of hours for alleged "block billing."

   *3. Fee Multiplier*

As part of the Second Fee Petition, Plaintiff asks that the Court exercise its discretion to apply a 2.0 multiplier to the lodestar amount to account for the contingent and risky nature of success, quality of opponent, complexity of legal issues, and the quality of the work performed. Dkt. # 271 at 11-12. UPS opposes, arguing that Plaintiff has not demonstrated that this is an "exceptional" case deserving of a multiplier. Dkt. # 275 at 10-11. The Court agrees with UPS.

There is a "strong presumption" that the lodestar figure represents the reasonable fee award. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *224 Westlake, LLC v. Engstrom Prop., LLC*, 281 P.3d 693, 713 (Wash. Ct. App. 2012). In an appropriate case, the court can grant an upward or downward adjustment to the lodestar amount to account for factors that are not part of the calculation of reasonable rates or hours expended. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. 2000); *Bowers*, 675 P.2d at 204. A multiplier thus applies in exceptional circumstances that the lodestar calculation does not adequately reflect. *Conti v. Corp. Servs. Grp., Inc.*, 30 F. Supp. 3d 1051, 1083 (W.D. Wash. 2014), *aff'd*, 690 F. App'x 473 (9th Cir. 2017). The Court has "broad discretion in awarding a contingency multiplier." *Stewart v. Snohomish Cty. Pub. Util. Dist. No. 1*, No. C16-0020-JCC, 2017 WL 4538956, at *3 (W.D. Wash. Oct. 11, 2017) (quoting *Hotchkiss v. CSK Auto, Inc.*, 949 F. Supp. 2d 1040, 1046 (E.D. Wash. 2013)). Lodestar adjustments, under Washington law, are considered "rare." *Mahler v. Szucs*, 135 Wash.2d 398, 957 P.2d 632, 651 (1998).

The Court finds it instructive to observe that Plaintiff also requested a multiplier of 2.0 in its fee petition before the Ninth Circuit. *Matson v. United Parcel Service, Inc.*, Case. No. 13-36174, Dkt. # 47-1, pp. 11-13. In denying Plaintiff's request, the Ninth

Circuit observed that the circumstances of this litigation was not deserving of exceptional treatment:

> The § 301 preemption question here arises fairly frequently, and it was not novel. *See Matson*, 840 F.3d at 1128, 1136. The risk in this case was generic and unexceptional, and the lodestar amount adequately accounts for it. *See Pham*, 151 P.3d at 542. The fee agreement provided that Matson's attorneys receive 40 percent ($200,000) of the $500,000 jury verdict, rather than their standard 30 percent for contingency fee cases. Even if fees for the fee litigation are excluded, the lodestar amount is comparable to the amount that Matson's attorneys agreed would account for their risk, and Matson might be awarded additional fees and costs in the district court.

Dkt. # 280 at 32.

This Courts agrees with the Ninth Circuit's assessment. Plaintiff's justifications for a 2.0 multiplier here are almost identical to those rejected by the Ninth Circuit. The facts of this case simply do not represent the type of "rare" and "'exceptional' circumstances" when the lodestar figure does not adequately represent counsel's "superior performance and commitment of resources." *Kelly v. Wengler*, 822 F.3d 1085, 1102 (9th Cir. 2016) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)); *Sanders v. State*, 240 P.3d 120, 142 (Wash. 2010). Counsel's performance in this case, while competent, does not justify a multiplier.

As for the contingent nature factor, although Plaintiffs' counsel took this lawsuit on a contingency basis, they have not demonstrated how the case was particularly high risk, or how the risk was not already reflected in the hourly rates or the contingency fee award. A court should only award a contingency multiplier when "the lodestar figure does not adequately account for the high risk nature of the case." *Pham*, 151 P.3d at 983.

The Court, therefore, will not make any upward adjustment of the lodestar figure. In total, the Court will permit Plaintiffs to recover a total of $343.034.50 in fees. This figure reflects Plaintiff's claimed $368,753.50 in fees, less the fees associated with malpractice claims ($8,063.50), the fees associated with Dr. Brown ($2,511), and the fees reflecting clerical work ($15,144.50).

*4. Fees From First Petition and Fees on Reply*

As mentioned above, this Court had previously terminated Plaintiff's First Fee Petition. Nevertheless, Plaintiff requests, in a footnote, that the Court now decide this First Fee Petition on the merits. Dkt. # 271 at 2, n.2. Arguments raised only in footnotes, or only on reply, are generally deemed waived. *Estate of Saunders v. C.I.R.*, 745 F.3d 953, 962 (9th Cir. 2014); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010); *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (per curiam). As this Court has made clear, "the practice of putting substantive material in footnotes provides difficult reading for the Court and is used by the parties to avoid the page limitations in the local rules. It is also poor advocacy: a request in a footnote is much more likely to be overlooked or missed by the Court. If an argument is worth making, a party should put the argument in the body of its brief." *Bach v. Forever Living Prod. U.S., Inc.*, 473 F. Supp. 2d 1127, 1131–32 (W.D. Wash. 2007). The Court will not consider this footnoted motion-within-a-motion at this juncture. Should Plaintiff wish the Court to reconsider its prior rulings or seek additional fees, it should do so properly under the Federal Rules of Civil Procedure and the Local Rules of this Court.

Plaintiff also attaches to her Reply a Declaration of Donald H. Mullins ("Reply Declaration") that lists additional fees and costs totaling over $30,000. Dkt. # 279. However, Plaintiff only refers to this Reply Declaration in a footnote, and never actually requests that the Court award these fees and costs. Dkt. # 278 at 6, n. 14. Moreover, a majority of these newly-listed fees predate the filing of Plaintiff's Second Fee Petition (December 11, 2017) and should have been included in the initial filing. *See* Dkt. # 279 at 5-8. By not including these entries in the Second Fee Petition itself, Plaintiff deprived UPS of the opportunity to object to them, for no apparent reason other than neglect. While UPS could have requested leave to file a surreply, the Court will not punish UPS for abstaining from upsetting the briefing schedule. Accordingly, for the purposes of the

ORDER- 17

Second Fee Petition, the Court will not award the fees and costs identified in the Reply Declaration at Dkt. # 279.

### C. The Court Grants in Part Plaintiff's Request For Costs

Plaintiff argues that she is entitled to recover a total of $12,588.41 in costs, which reflect $5,581.64 in electronic research, $211.1 for legal messengers and couriers, $203.77 for lunch and parking during the second jury trial, and $6,592 in expert witness fees associated with the Barnard Declaration. Dkt. # 271 at 10-11; Dkt. # 272-2. UPS largely does not contest these costs, except to argue that the Barnard Declaration should be stricken and Plaintiff should not be entitled to recover these costs. Dkt. # 275 at 14.

The Court agrees with UPS that the Barnard expert fees should not be recoverable. The Barnard Declaration did not offer much specialized insight, and the bulk of the utility came from citing to other publicly-available cases. Moreover, UPS is right to observe that the Barnard Declaration is "strikingly similar" to the declaration submitted by Barnard for the Ninth Circuit fee petition, to the point where large portions have been lifted word-for-word, without changes. *Compare* Dkt. # 273 *with* Dkt. # 276 at 33-44. The Court concludes that Plaintiff is not entitled to recovers these costs as the current Barnard Declaration is duplicative, unnecessary, and largely unhelpful. The Court will not permit Plaintiff to recover the $6,592 in expert fees.

Plaintiff also requests the return of $4,121.94 in taxable costs that Plaintiff paid to UPS after the second trial. Dkt. # 271 at 10-11. UPS does not object to this request. Accordingly, the Court will permit the recovery of these costs.

Accordingly, the Court will permit Plaintiffs to recover a total of $9,968.85 in costs. This figure reflects Plaintiff's claimed $12,588.41 in claimed costs, plus $4,121.94 in costs paid to UPS after the second trial, less the Barnard expert fees ($6,592) and the costs associated with Dr. Brown ($149.50).

### III. CONCLUSION

Accordingly, for the reasons stated above, the Court GRANTS IN PART Plaintiff's Second Fee Petition. The Court awards Plaintiff $343.034.50 in attorney fees and $9,968.85 in costs.

Dated this 26th day of July, 2018.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge